# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **BRUCE JACKIM,** *et al.*, | : | **Case No. 1:05cv1678** |
| | : | |
| Plaintiffs, | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| v. | : | |
| | : | **ORDER** |
| **CITY OF BROOKLYN,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

On May 4, 2006, this Court conducted an on-the-record status conference and hearing.[1] Plaintiff Nina Jackim and counsel for all parties attended.  Among other things, the Court addressed the substantive and procedural impropriety of Plaintiffs' Supplement to Plaintiffs' Motion for Summary Judgment (Doc. 61) (the "Supplement"), against which the defendants filed a joint Motion to Strike (Doc. 62).[2]

Following numerous disrespectful comments from Plaintiffs' counsel relative to the Supplement, the Court concluded that the Supplement was frivolous, would be ignored when ruling

---

[1] A transcript of the proceedings held on May 4, 2006 has been filed manually with the Court (Doc. 90).

[2] The Court denied the defendants' joint Motion to Strike the Supplement; however, it did so primarily for the reason that Rule 12 of the Federal Rules of Civil Procedures addresses striking matters from *pleadings*, not briefs.  The Court also determined that retaining the Supplement in the record as evidence of the document's impropriety was particularly appropriate in this case.  The Court, however, advised the parties that, although the Supplement would remain in the record, the Court would completely disregard it.

on Plaintiffs' Motion for Summary Judgment, and warranted sanctions in light of the Court's prior warnings to Plaintiffs that they would be sanctioned if they continued to make frivolous filings and take positions that have no reasonable legal basis.

Accordingly, the Court instructed the defendants to submit a statement reflecting the expenses incurred in preparing the joint Motion to Strike the Supplement. The Court indicated that, upon receipt of the defendants' statement, it would determine: (1) the appropriate amount of the sanctions to be imposed; and, (2) against whom the sanctions would be imposed. By letter dated June 23, 2006, the defendants submitted the requested statement, which reflected $540.00 in fees incurred relative to preparing the joint Motion to Strike the Supplement. As promised at the May 4, 2006 hearing, this Order addresses the Court's determinations.

**I.    DISCUSSION**

As is evident from the Court's prior written orders in this case, this is not the first time the conduct of Plaintiffs - and their counsel - has derailed the progress of this case.  Seemingly, it has become Plaintiffs' practice (through their counsel) to take unreasonable positions in virtually <u>every</u> aspect of the administration of this case, thereby requiring the Court to expend its resources considering a multitude of unnecessary disputes.

The Court has resolved several discovery disputes in this case, each time struggling to comprehend how Plaintiffs (through their counsel) can espouse the positions they take. For example, when noticed for depositions in this case, Plaintiffs sought a protective order (Doc. 40), arguing that they should not be subjected to discovery in this case because the defendants could glean all the evidence they needed from the Plaintiffs' testimony in Bruce Jackim's underlying criminal trial.

As explained in the Court's February 23, 2006 Order (Doc. 44), Plaintiffs' Motion for a

2

Protective Order was wholly inappropriate. In this case, Plaintiffs have asserted civil claims against the defendants. The Court admonished Plaintiffs' counsel that Plaintiffs' prior testimony in Bruce Jackim's criminal trial has no immediate bearing on the defendants' right to obtain discovery from Plaintiffs within the context of this case; primarily because the present defendants *were not parties to the prior criminal proceedings* and, therefore, were not involved in developing the record in those proceedings, and because they have different interests than did the parties in those proceedings.

The Court reminded Plaintiffs' counsel that discovery is a fundamental aspect of civil procedure, and warned Plaintiffs that their request for a protective order for the reasons asserted bordered on sanctionable conduct. The Court warned Plaintiffs' counsel that continued disrespect for proper procedure would not be tolerated, and may warrant sanctions in the future.

With that background in mind, the following circumstance developed. On February 2, 2006, before discovery had occurred, Plaintiffs filed a Motion for Summary Judgment (Doc. 36).[3] Two days before the defendants' response deadline - and almost three months after filing their Motion for Summary Judgment - Plaintiffs filed the Supplement (Doc. 61), asserting additional arguments in support of one of the "claims" briefed in their original Motion for Summary Judgment.[4] In sum, *at least half* of the original motion and *all* of the Supplement addresses the alleged "constitutional unfairness" of Mr. Jackim's underlying criminal trial.

---

[3] Plaintiffs' Motion for Summary Judgment has since been denied (Doc. 92).

[4] The Court is hesitant to label Plaintiffs' arguments "claims" for the reason that they were never raised in the original Complaint, or even in the Amended Complaint. Rather, they were raised for the first time by way of a request to amend the Complaint for a second time - a request which was properly denied. Plaintiffs' claims, therefore, relating to Bruce Jackim's alleged unfair trial are not truly "claims" in that they have not been pled as a cause of action in the Complaint or in the Amended Complaint.

In essence, and despite the Court's numerous prior rulings to the contrary, Plaintiffs - through the filing of the Supplement - <u>continued</u> to take the untenable position that this Court somehow has the authority to circumvent state court appellate procedure by reviewing the conduct and rulings of the state trial court judge in connection with Mr. Jackim's criminal conviction ***while that conviction remained standing, and subject to an ongoing appeal***. As with other filings submitted by Plaintiffs, the Supplement attempted to raise new claims - not raised in either the original Complaint or the Amended Complaint - based upon Mr. Jackim's belief that his criminal conviction should be overturned.[5]

Understandably, the defendants were upset by Plaintiffs' filing and immediately filed a joint Motion to Strike the Supplement, arguing that it is: (1) procedurally inappropriate in so far as it was filed two days before the Defendants' response deadline, without leave and without any procedural support in the local rules or otherwise; and, (2) substantively inappropriate because it makes arguments that are not cognizable under any reasonable interpretation of the law.

**A.     Legal Standard**

A federal court has several tools available for imposing sanctions, where warranted, including the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the court's inherent power to control

---

[5] For instance, Plaintiffs' Motion for Leave to file a Second Amended Complaint, which was denied, prayed that "the judgment of the State of Ohio in the Common Pleas Court, based on the guilty verdict of the jury against Plaintiff B. Jackim, be vitiated by the violation of Plaintiffs' basic constitutional rights set forth herein and therefore be declared null and void." (Doc. No. 27-1.) Likewise, Plaintiffs' Motion for Summary Judgment concluded that "[v]acating the jury verdict and declaring the judgment on the verdict null and void will best serve the appearance of justice." (Doc. No. 36-1.) Finally, the Supplement attempted to raise - for the first time in this litigation - claims of "spoliation of evidence" and "obstruction of justice" based upon evidentiary rulings in the state court criminal trial, which Plaintiffs asserted rendered the trial "unfair." (Doc. No. 61.)

the conduct of the litigants before it and to guarantee the integrity of court proceedings.

Rule 11 of the Federal Rules of Civil Procedure provides, among other things, that the signature of a party or its counsel on a paper filed in a civil case certifies that, to the best of the individual's knowledge, "the claims, defenses, and other legal contentions therein are ***warranted by existing law*** or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See* Fed. R. Civ. P. 11(b)(2)(emphasis added). After notice and a reasonable opportunity to be heard, a court may - *sua sponte* - impose sanctions upon an attorney, law firm, or party if the court determines that such a person and/or entity is responsible for a violation of subdivision (b). *See* Fed. R. Civ. P. 11(c)(1)(B).

Rule 11 was amended to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the parties, and reinforcing those obligations through the imposition of sanctions. *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986). Throughout its various parts, Rule 11 instructs the parties on the need for a ***reasonable inquiry*** into the facts and ***the law*** to satisfy the affirmative duties imposed by that Rule. *Id.*

Directly relevant to the actions undertaken by Plaintiffs and their counsel is that "[l]itigants may be sanctioned under the amended rule for continuing to insist upon a position that is [not] tenable." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). The current version of Rule 11 illuminates this critical distinction from its former self:

> The 1983 version of Rule 11 authorized the imposition of sanctions for conduct tied to a particular pleading. The 1993 Amendments to Rule 11 expanded to its reach to conduct related to the case as a whole in making sanctionable a litigant's insistence on a position after it is no longer tenable.

*Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 376 (6th Cir. 1996)(District Judge

Cohn, concurring).

Reasonableness is the baseline for both the initial inquiry, and for all subsequent conduct: "In this circuit the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder*, 109 F.3d at 293 (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). Subjective bad faith is not required for a court to issue sanctions. *National Union Fire Ins. Co. v. Wilkins*, 2006 WL 1000120 (S.D. Ohio April 13, 2006). Likewise, a good faith belief in the merits of a case is insufficient to avoid sanctions under Rule 11. *Mann, supra*, 900 F.2d at 958; *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). If a court concludes that Rule 11 has been violated, it is mandatory that sanctions be imposed. The court, however, has "wide discretion" in deciding the nature and extent of those sanctions. *Albright*, *supra*, 788 F.2d at 1221-22.

With respect to unnecessarily vexatious action by counsel, federal law provides an additional remedy:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof ***who so multiplies the proceedings in any case unreasonably and vexatiously*** may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). After Congress amended the statutory language in 1980, the Sixth Circuit dispensed with a subjective standard, holding instead that § 1927 "authorizes a court to assess fees against an attorney for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Circuit 1986). The Court explained that a finding of "bad faith" on the part of the party in question was not required for liability under § 1927. Rather, an attorney can be found to have unreasonably

6

and vexatiously multiplied the litigation, and an assessment of fees against that attorney is proper, where:

> [A]n attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.

*Id.* at 1230.

The *Jones* decision recognized an attorney's ethical obligation of zealous advocacy, but the Court cautioned that:

> An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious."

*Id.* The Sixth Circuit subsequently held that § 1927 sanctions are appropriate where:

> [A]n attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'

*Shepard v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2003). The standard for imposing sanctions under § 1927, however, continues to be the objective standard announced in *Jones*. *See Ridder, supra*, 109 F.3d at 298.

Finally, "[a] federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Trust v. Sabino*, 2000 WL 1478372, at *1 (6th Cir. Sept. 8, 2000)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991))(emphasis added). The Supreme Court has long-recognized this power, determining in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), that the imposition of attorney

7

fees could be upheld under a court's "inherent powers" after a finding that an attorney "willfully abuse[d] judicial processes" through conduct "tantamount to bad faith." *Id.* at 764-66. In *Chambers, supra,* the Court confirmed that this inherent authority is an ***independent basis*** for sanctioning bad faith conduct in litigation. *Id.* at 44-45. To make such an award in this Circuit, however, a court:

> [M]ust find that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.

*Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997). Importantly, a court in this Circuit need not conclude that conduct would be sanctionable under any other rule or statute to impose sanctions under its inherent powers. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).

**B.  Analysis**

There is no question that Plaintiffs and their counsel have been under a continuing obligation to abide by the requirements of Rule 11, and to ensure that each and every document submitted to the Court was <u>then-warranted</u> by the law. *See Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1988)("reasonable inquiry under Rule 11 is not a one-time obligation."). Yet Plaintiffs repeatedly have failed to satisfy this basic duty.

It simply was not reasonable for Plaintiffs - following this Court's Order denying Plaintiffs' request to file a Second Amended Complaint - to continue to advocate their position that this Court has the authority to review or overturn a state court criminal verdict, ***while that verdict remains standing and state appellate procedures are ongoing***, on the purported basis that Plaintiffs were denied the "right to a fair trial in front of an impartial judge." Previously finding that a second amendment to the Complaint would be futile, the Court made it abundantly clear to Plaintiffs (at that

8

time) that a federal district court - by way of a Section 1983 claim - was not the proper forum in which to retry a state court criminal conviction.[6]

The Court further explained that it was not authorized to sit as a state court of appeals and second-guess a criminal action, except where complaints about the criminal trial are asserted in the

---

[6]  *See Heck v. Humphrey*, 512 U.S. 477 (1994), where the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, ***or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid***, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C §2254. ***A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.*** Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (emphasis supplied).  As an example of some "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the Supreme Court provided the following:

> An example of this latter category - a §1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful - would be the following: A state defendant is convicted of and sentenced for the crime of ***resisting arrest***, defined as intentionally preventing a peace officer from effecting a lawful arrest ... He then brings a §1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this §1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata ... the §1983 action will not lie.

*Id.* at 487, n. 6 (internal citations omitted)(emphasis supplied).

9

context of a habeas corpus proceeding under 28 U.S.C. § 2254 **after** exhaustion of all available state remedies. The Court pointed out that, where, as here, the state court proceedings are still ongoing - and state appellate remedies are still available - no habeas corpus claim can be, or even should be, asserted. Plaintiffs, nevertheless, continued to attempt to assert their "claim" by way of a Motion for Summary Judgment, the filing of a purported "supplement" to their Motion for Summary Judgment, and frivolous arguments at court-ordered hearings.

In a civil rights action involving claims of municipal liability, counsel for the plaintiff was sanctioned under 28 U.S.C. § 1927 for failing to diligently withdraw the claims for municipal liability after:

> [T]he magistrate judge delivered a poignant warning to [plaintiff's counsel] that he had crossed the line into "unreasonable and vexatious multiplication of proceedings" by imposing § 1927 liability for the filing of the second amended complaint, only to rescind that award in response to [plaintiff's counsel's] request for leave yet again to amend the complaint. Surely, at that point, [plaintiff's counsel] should have proceeded cautiously when asserting the same claims in the third amended complaint. Thereafter, however, [plaintiff's counsel] continued asserting the same frivolous claims up to and including plaintiff's motion in opposition to summary judgment ...

*Ridder, supra*, 109 F.3d at 299. While in that case the plaintiff continued to pursue the frivolous claim for five years and here Plaintiffs have been attempting to pursue their "claim" since December 2005, the Court does not find this distinction to be determinative.

The Court finds, rather, that Plaintiffs' actions in this case with respect to their **numerous** attempts to assert a legally unsupportable claim - first through a request to amend Plaintiffs' Complaint for a second time (a request which was denied), then through a request for the Court to hold its prior ruling in abeyance (a request which was likewise denied), then through an eleventh-

10

hour filing of a procedurally improper "supplement" to Plaintiffs' Motion for Summary Judgment, and finally through openly aggressive arguments at the May 4, 2006 status conference (where counsel informed the Court that the claims could be asserted, even if barred by clear and long-standing Supreme Court precedent, because this Court should "change" the law to fit counsel's view of what it should be) - have been irresponsible, and show an utter disregard for the orderly administration of civil actions filed in this Court.

Counsel's actions were likewise violative of their duties as officers of the Court. On repeated occasions, Plaintiffs' counsel overzealously advocated a patently baseless claim - in complete ignorance of established law and the repeated warnings of the Court. As counsel continued to advance Plaintiffs' unsupportable position, this case grew to include a long, complicated history that necessitated the expenditure of time, energy, and resources on the part of the parties opposing Plaintiffs' frivolous filings, and on the part of the Court in ruling on those filings.

That Plaintiffs' "claims" relating to an unfair trial and a biased judge have no place in a federal district court *while the state court criminal conviction remains standing* would have been readily apparent to Plaintiffs' counsel had a reasonable, pre-filing inquiry into the law been conducted pursuant to Rule 11. Ironically, Plaintiffs did indeed file an appeal from the criminal conviction with the state appellate court. Plaintiffs, nevertheless, inexplicably (and stubbornly) continued to ask this Court to assert ancillary jurisdiction over an issue they knew full well was still pending within the State court system - even in the face of clear precedent contrary to their position. The filing of the Supplement, therefore, cannot be viewed in any way other than as a procedurally improper, bad-faith attempt on the part of Plaintiffs to interject a new cause of action into this litigation - despite the Court's repeated directives to Plaintiffs' counsel to research and review the

11

law on collateral attacks of a state court criminal convictions by a federal court.

As outlined by the Court on record at the May 4, 2006 status conference, based on this conduct the Court finds that **limited** sanctions are appropriate in this case; specifically with respect to the filing of Plaintiffs' Supplement. Plaintiffs were warned after they refused to participate in discovery, which the Court found to be one of the most unreasonable positions ever taken by a party (or its counsel) in a civil case, that further similar conduct would result in sanctions. Plaintiffs simply cannot ask this Court to ignore the basic requirements of Rule 11, and Plaintiffs' counsel simply cannot ignore their own basic obligation to research and understand the law. Their conduct has resulted in an unwarranted expense to the defendants in the amount of $540.00 in fees incurred relative to preparing the joint Motion to Strike the Supplement.

With respect to a determination as to against whom the sanctions should be imposed, the Court finds that, as in *Chambers, supra*, some of Plaintiffs' conduct is sanctionable under Rule 11 (*i.e.*, continuing to litigate a position not then-supportable under any reasonable interpretation of the law), while Plaintiffs' other conduct falls outside Rule 11 (*i.e.*, acting wholly contrary to prior orders issued by the Court). Plaintiffs' Rule 11 conduct, therefore, is intertwined with misconduct that can be addressed by 28 U.S.C. § 1927 and the Court's inherent powers.

Plaintiffs' actions in continuing to litigate a legally-unsupportable position despite repeated warnings, which included the filing of a patently frivolous Supplement, was unreasonable given the circumstances outlined above. Even if Plaintiffs could be found to have a good faith belief that their position had legal merit - which the Court is hard pressed to conclude - such good faith would not be sufficient to prevent Rule 11 liability from arising in this case. The Court further finds that counsel for Plaintiffs "unreasonably and vexatiously multiplied the litigation" by attempting to assert

12

claims relating to an alleged "unfair trial" and "biased judge" through the filing of a Motion for Summary Judgment - and a "supplement" to that Motion - long after the point in time in which counsel knew or should have known that the claim being pursued was frivolous on the merits and was not then-warranted (given the standing of Bruce Jackim's criminal conviction).

While the Court has wide discretion in deciding the nature and extent of sanctions, it cannot order monetary sanctions against a represented party for violations of 11(b)(2) - the subsection at issue here. *See* Fed. R. Civ. P. 11(c)(2)(A). The Court also cannot order monetary sanctions to be paid to the opposing party under Rule 11, if those sanctions are imposed *sua sponte*. In such a case, the fees are payable to the Court. *See National Union Fire Ins. Co. v. Wilkins*, 2006 WL 1000120, at *4 (S.D. Ohio April 13, 2006); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments ("The revision [to subsection (c)] provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court.").

While clearly it was counsel's failure to know or learn the law and federal court procedure that is most at fault here, the Court cannot say that Plaintiffs themselves played an insignificant role in the violations that occurred here. Indeed, Plaintiffs have been actively - and vociferously - involved in court proceedings and hearings that addressed the underlying violations. This indicates that Plaintiffs themselves were active participants in the decision making process that led to the prosecution of a legally unsupportable claim and frivolous filings. The Court further finds that the actions of both Plaintiffs and their counsel in continuing to ignore the Court's repeated warnings and directives with respect to their attempts to interject a meritless claim into this action constitutes conduct that is "tantamount to bad faith." Accordingly, the Court holds that, pursuant to its inherent power to control the litigants and counsel appearing before it, Plaintiffs are liable for 20 percent of

the sanction award imposed by the Court, with Plaintiffs' counsel being liable for the remaining 80 percent.

## II. CONCLUSION

For the foregoing reasons, a **SANCTION of $540.00 is hereby IMPOSED** upon Plaintiffs and Plaintiffs' counsel, with Plaintiffs' two separate counsel of record to split their 80% equally. Within ten (10) days of the date of this Order: (1) Plaintiffs shall remit to counsel for the defendants a check in the amount of $108.00; and (2) Plaintiffs' counsel shall each remit to counsel for the defendants checks in the amount of $216.00.

**IT IS SO ORDERED.**

        **s/Kathleen M. O'Malley**
        **KATHLEEN McDONALD O'MALLEY**
        **UNITED STATES DISTRICT JUDGE**

**Dated: October 25, 2006**