**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRUCE JACKIM**, *et al.* | : | **Case No. 1:05 cv 1678** |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF BROOKLYN,** *et al.*, | : | <u>**MEMORANDUM & ORDER**</u> |
| | : | |
| **Defendants.** | : | |

This case involves, *inter alia*, claims for money damages to rectify an alleged deprivation of various civil rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution - including a claimed conspiracy to violate those rights - all purported to be assertable under 42 U.S.C. § 1983.  Supplemental state law claims have also been raised.

On May 24, 2005, Bruce A. Jackim and Nina Lynn Jackim ("Plaintiffs") filed this civil action in the Cuyahoga County Court of Common Pleas against the City of Brooklyn, Sam's East, Inc. d/b/a Sam's Club, and two individual police officers employed by the City of Brooklyn, Officer Don

Meadows and Officer John Albany  (collectively, "Defendants").[1]  Plaintiffs' claims arise from a physical altercation that occurred at a Sam's Club shopping store, and the subsequent criminal prosecution of Plaintiffs in connection with that event.  The action was removed to this Court on June 27, 2005.

Pending before the Court are the following Motions:

1. Defendant Sam's East, Inc., d/b/a/ Sam's Club's("Sam's Club"), Partial Cross Motion for Summary Judgment (Doc. No. 63);

2. The Brooklyn Defendants' Cross Motion for Summary Judgment (Doc. No. 66); and,

3. Defendant Sam's East, Inc., d/b/a/ Sam's Club's Motion for Summary Judgment (Doc. No. 73).

For the reasons explained below, the Court rules on these motions as follows:

1. Defendant Sam's East, Inc., d/b/a/ Sam's Club's Partial Cross Motion for Summary Judgment (Doc. No. 63) is **GRANTED**;

2. The Brooklyn Defendants' Cross Motion for Summary Judgment (Doc. No. 66) is **GRANTED IN-PART** and **DENIED IN-PART** without prejudice to a renewal of that motion by Defendants, if appropriate, at a later date.

3. Defendant Sam's East, Inc., d/b/a/ Sam's Club's Motion for Summary Judgment (Doc. No. 73) is **GRANTED**.

4. All claims by Nina Jackim against any Defendant are hereby **DISMISSED;** all

---

[1]     Plaintiffs also named two John Doe Defendants and one Jane Doe Defendant.  The John Doe Defendants (denominated as John Does 1 and 2) were described as unknown City of Brooklyn employees and the Jane Doe Defendant was described as an unknown Sam's Club employee.  Despite discovery, (during which the names of all involved were elicited) and the opportunity to amend their complaints, the Plaintiffs never sought to substitute named parties for these Doe Defendants.  Because the statute of limitations on all of the claims against the Doe Defendants has long since passed for all of Plaintiffs' claims, and the concept of "relation back" does not apply to claims against newly added Defendants, all of Plaintiffs' claims against all of the Doe Defendants are hereby **DISMISSED**.

claims by both Plaintiffs against Sam's Club East Inc. d/b/a/ Sam' Club are hereby **DISMISSED**; Bruce Jackim's equal protection claim as against the Brooklyn Defendants is hereby **DISMISSED;** Bruce Jackim's *Monell* and federal Respondeat Superior claims against the City of Brooklyn are hereby **DISMISSED;** and, Bruce Jackim's conspiracy claim is **DISMISSED IN-PART**, as explained in this opinion.

5.    Bruce Jackim's remaining federal claims against the individual officers and state law claims against all of the Brooklyn Defendants are hereby **STAYED** pending further proceedings in connection with the criminal charges pending against Mr. Jackim in state court.

## I.    BACKGROUND

The claims in this case - and the pending Motions - all relate to an incident that occurred on May 25, 2003 at a Sam's Club shopping store located on Brookpark Road in the City of Brooklyn.  It is not disputed that, on that day, Plaintiffs were attempting to purchase some merchandise from Sam's Club when a problem developed with Plaintiffs' claimed "tax-exempt" membership status.  The cashier ringing up Plaintiffs' purchases called upon another Sam's Club employee for assistance, who subsequently advised Plaintiffs to complete their purchases and step over to the customer service desk to discuss the problem.  Plaintiffs complied with this directive.  Mr. Jackim was the first to arrive at the service desk.

At the service desk, while a Sam's Club customer service employee investigated Plaintiffs' membership status, a dispute erupted at the counter.  In response, an off-duty City of Brooklyn police officer working as private security for Sam's Club, Officer Meadows, approached the counter and asked Mr. Jackim for identification.  The request escalated into a physical altercation between Officer Meadows and Bruce Jackim.  According to Plaintiffs' version of events, which is relevant to the analysis of Plaintiffs' claims of excessive force, Mr. Jackim was dissatisfied with how customer service personnel were handling the investigation of his membership status.  At some point, he began making

-3-

comments and voicing his concerns to the manager and the clerks who were assisting him. *Deposition of Bruce Jackim*, pp. 88-100. This, in turn, attracted the attention of Officer Meadows. Bruce Jackim testified that Officer Meadows "abruptly jumped up to the counter" and began shouting at Mr. Jackim, telling Mr. Jackim that he - Officer Meadows - did not like Mr. Jackim's attitude, and that Mr. Jackim would be arrested if he did not produce identification. *Deposition of Bruce Jackim*, pp. 100-105. It is at this point Plaintiffs allege Officer Meadows- "without reason," and purportedly while Mr. Jackim attempted to produce the requested identification - "suddenly attacked" and "grabbed Plaintiff Bruce Jackim, pushed him into the counter, sprayed him with pepper spray, and tackled him to the ground." *Amended Complaint*, ¶¶14-15. Plaintiffs claim this all occurred while Mr. Jackim remained passive and did not struggle or resist in any way. *Deposition of Bruce Jackim*, pp. 110-125.[2]

Another off-duty police officer from the City of Brooklyn, Officer John Albany, happened to enter the store at some point during the altercation, and attempted to assist the parties. An undetermined

---

[2]   The Brooklyn Defendants dispute Plaintiffs' implication that it was Officer Meadows who created the conflict, rather than Mr. Jackim. They contend Mr. Jackim became loud and disruptive during the investigation of his membership status, and was advised by Officer Meadows to be patient while customer service personnel performed their jobs. When Mr. Jackim's irritation escalated, he was asked for identification by Officer Meadows. Defendants claim that Mr. Jackim refused to produce identification and it was then that the officer identified himself as an off-duty police officer and advised Mr. Jackim he was under arrest for disorderly conduct and obstructing official business. When Officer Meadows attempted to handcuff Mr. Jackim, the Brooklyn Defendants claim Mr. Jackim struggled to get away and knocked the security officer to the floor. During the struggle, Mr. Jackim allegedly knocked a can of pepper spray out of Officer Meadows's hand before it could be properly used on Mr. Jackim. Finally, when assistance came and another effort was made to handcuff Mr. Jackim, Mr. Jackim allegedly bit the arm of one of the arresting officers. The Brooklyn Defendants point out that the jury in the state criminal case presumably believed Mr. Jackim to be the aggressor, rather than the officer, as Mr. Jackim was convicted of resisting arrest and assault on a police officer.

number of on-duty police officers from the City of Brooklyn also arrived on the scene in response to a "911" call.  The end result was that Plaintiffs were taken into custody and subsequently charged with various criminal offenses.  During the course of the criminal investigation, Nina Jackim pled "no contest" to attempted disorderly conduct.  *Deposition of Nina Jackim*, p. 50.  Bruce Jackim, however, was convicted by a state court jury of resisting arrest and assault with police officer specification (a fourth degree felony).  *See*  Journal Entry dated 8/02/05, Cuyahoga County Court of Common Pleas, Case No. CR-03-439646-ZA.

The civil Complaint filed by Plaintiffs in the action pending before this Court alleges Plaintiffs were deprived of the right to equal protection of the law, were subject to an unreasonable seizure with excessive force, were subject to the defendants' reckless infliction of emotional distress, that the defendants conspired to deprive Plaintiffs of various civil rights, and that the defendants were negligent. All of the claims, including those relating to the underlying arrest and criminal prosecution, were asserted while the state court criminal proceedings (particularly Bruce Jackim's direct appeal to the Ohio Court of Appeals) were still pending.   Following briefing on the various Motions, the Eighth District Court of Appeals of Ohio issued a Judgment which reversed - ***and remanded for retrial*** - Bruce Jackim's criminal conviction on grounds that the trial court improperly excluded a videotape the Jackims claim contains a video image of the events that transpired at the Sam's Club on May 25, 2003. The opinion issued by the Ohio Court of Appeals focused solely on issues raised in the trial court relating to an alleged break in the chain of custody with respect to the videotape.  The appellate court ultimately found that, when evidence is proffered by a criminal defendant, concerns with  the chain of custody go to the weight of the evidence, rather than to its admissibility.  It held, therefore, that the trial court improperly excluded the videotape and that a new trial was required.  The Court of Appeals did

not make any findings as to the substance of the evidence, nor did it question whether there was sufficient evidence presented in the first trial to sustain  Mr. Jackim's convictions.  *See State v. Jackim*, 2006 WL 2639444, 2006 - Ohio - 4756 (Ohio App. 8th Dist., Sept. 14, 2006).

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  In assessing the merits of the motion, the Court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party.  *Woythal v. TexTenn Corp.,* 112 F.3d 243, 245 (6th Cir.1997).

An opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252 (6th Cir.1998).

This Circuit emphasized the showing required to defeat summary judgment in *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992).  There, the Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ...
> * * *
> The "mere possibility" of a factual dispute is not enough.  Rather, in order to defeat summary judgment a plaintiff must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary.  Where the defendant demonstrates that after a

> reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted.

*Id.* at 581 (internal citations omitted).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law."  *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996) (citation omitted).

## III.  DEFENDANT SAM'S CLUB'S PARTIAL CROSS MOTION FOR SUMMARY JUDGMENT

In its Partial Cross Motion for Summary Judgment - filed on May 3, 2006 - Sam's Club seeks judgment on Plaintiffs' § 1983 claims.  More specifically, Sam's Club requests that the Court dismiss Plaintiffs' claims of excessive force and unreasonable seizure (both asserted in Count Two of the

Amended Complaint).[3]

Rather than respond to the arguments made by Sam's Club in its partial Cross Motion for Summary Judgment, Plaintiffs simply claim "there is no record of a suit pending against the Plaintiffs in this court," and that "the only litigation which is on record is between the parties in the instant case filed against the Defendants by the Plaintiffs." Plaintiffs assert, therefore, that because "Defendants are in a defensive posture in opposition to Plaintiffs' civil rights claims," they have not "invoked the jurisdiction of this court to litigate and to judicially resolve a certain claim against the Plaintiffs."

Because Plaintiffs have not responded to the Cross Motion, the Court - in an Order dated

_____

[3]     Sam's Club further seeks judgment as a matter of law on Plaintiffs' attempts to overturn the state court criminal trial verdict. These attempts have taken the form of assertions made by Plaintiffs - in various Motions - that Plaintiffs were prejudiced by a "biased" judge and prosecutor, by erroneous evidentiary rulings, and by an otherwise "unfair" criminal proceeding. As Sam's Club points out, however, there is no Cause of Action before this Court that would relate to Plaintiffs' contentions of an "unfair trial." More importantly, as discussed by this Court in prior Orders, in this case, there is no jurisdictional basis *asserted in this case* upon which the Court could possibly review and grant Plaintiffs' request to overturn the state court jury verdict. As explained previously, a federal district court - by way of a § 1983 claim - is <u>not</u> the proper forum in which to retry a state court criminal conviction. Except in the context of a properly asserted habeas corpus action pursuant to 28.U.S.C § 2254, a plaintiffs may not ask a district court to act as a state Court of Appeals and second-guess trial court rulings made in a state criminal proceeding. Indeed, as explained above, Plaintiffs raised all of their complaints regarding the "fairness" of Mr. Jackim's criminal trial in the state court of appeals, which has since overturned and remanded his case to the Common Pleas Court. For these reasons, there is simply nothing to enter judgment on as it relates to the niceties of Mr. Jackim's criminal trial, despite Plaintiffs' almost exclusive focus on the their complaints about that proceeding.

December 18, 2006 - held that Sam's Club's partial Cross Motion would be treated as **unopposed.**[4] (*See* Doc. No. 118.) Rather than simply grant the Cross Motion on that basis, however, the Court will address the substantive merits of the Motion.[5]

### 1. Excessive Force - Bruce Jackim

In its Cross Motion, Sam's Club argued that Plaintiff Bruce Jackim's § 1983 claim for excessive force should be dismissed pursuant to the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). Sam's Club pointed out that, as of the filing of the Complaint and the filing of Sam's Club's Motion, Bruce Jackim's state court convictions for resisting arrest and assault on a police officer had not been overturned. As discussed earlier, those convictions have since been remanded back to state court for retrial following Mr. Jackim's appeal.

In *Heck*, the specific question presented was "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Heck,* 512 U.S. at 478. The bases for Heck's challenge to his criminal conviction (for murdering his wife) were that state officials had engaged in an unlawful and arbitrary investigation, had knowingly destroyed evidence, and

---

[4]    Plaintiffs attempted for the first time, more than five months after Sam's Club filed its Cross Motion, to seek leave to oppose the Cross Motion. Because the Court found Plaintiffs had not offered any legitimate basis in law for granting such an extremely belated leave (the sole basis for Plaintiffs' request was an erroneous and exaggerated interpretation of the ruling issued by the Eighth District Court of Appeals), and because Plaintiffs' proposed opposition raised arguments that were **wholly unrelated** to the Ohio Court of Appeals' decision <u>and</u> which were available to Plaintiffs from the inception of this case, Plaintiffs' request was denied. (*See* Doc. No. 118.)

[5]    While it is arguably unnecessary to address this motion given the Court's conclusion, explained later, that *no* § 1983 claim can be sustained against Sam's Club in the circumstances of this case, because the arguments presented by this motion mirror those also raised by the Brooklyn Defendants, the Court includes a discussion of them.

had caused an illegal voice identification procedure to be used at trial.  The district court dismissed the claims, finding they directly implicated the legality of Heck's confinement.  The dismissal was upheld by the circuit court.  *Heck,* 512 U.S. at 479.

In its opinion affirming the lower courts, the Supreme Court provided the following analysis to be applied not only to Heck's particular case, but also to a broad range of § 1983 claims:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C §2254.  ***A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.***  Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87 (emphasis supplied).  As an example of some "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the Supreme Court provided the following insight:

> An example of this latter category - a §1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful - would be the following: A state defendant is ***convicted of and sentenced for the crime of resisting arrest,*** defined as intentionally preventing a peace officer from effecting a lawful arrest ... ***He then brings a §1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures***.  In order to prevail in this §1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata ... the §1983 action will not lie.

*Id.* at 487, n. 6 (internal citations omitted)(emphasis supplied).

The Supreme Court classified Heck's allegations as analogous to a claim of malicious prosecution, which requires a "favorable termination" as an element of the claim.  *Heck,* 512 U.S. at 484.  In essence, the Court determined that Heck was attempting to collaterally attack his criminal conviction through the vehicle of a civil suit.  He was likewise ignoring the prohibition against parallel litigation over the issues of probable cause and guilt.  *Id.*  Because the Court "has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack," it affirmed the rulings of the lower courts.  *Heck,* 512 U.S. at 485.  It was from here that the "favorable termination" rule applicable to § 1983 cases developed.[6]

Although the Supreme Court, in *Heck,* directly addressed a § 1983 claim for **unreasonable seizure** following a conviction for resisting arrest, it did not specifically address a § 1983 claim for **excessive force** following convictions for resisting arrest and assault.  The Sixth Circuit, however, has analyzed this issue on several occasions.

Most recently, in *Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. Sept. 15, 2006), the Court was confronted with the issue of when the limitations period began to run on a § 1983 claim for excessive force following convictions for disorderly conduct and resisting arrest.[7]  In order to resolve that issue, the Court found it needed to make an initial determination as to the nature of the § 1983 claim.  *Swiecicki*, 463 F.3d at 493.  If the Court determined the excessive force claim would necessarily imply

---

[6]     *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005); *Wheat v. Ohio*, 23 Fed. Appx. 441 (6th Cir. 2001); *Peterson Novelties, Inc. v. Clinton Township*, 225 F.3d 659 (6th Cir. 2000); *Bar-Tec, Inc. v. Akrouche*, 959 F. Supp. 793 (S.D. Ohio 1997); *See Braxton v. Scott*, 905 F. Supp. 455 (N.D. Ohio 1995)(Aldrich, J.).

[7]     In that case, unlike here, the convictions were ***vacated*** on appeal and not remanded for a retrial.

the invalidity of the criminal convictions, it concluded *Heck* would apply and the statute of limitations would not begin to run until there was a favorable termination of the underlying convictions. If the Court found, however, that the excessive force claim was immediately cognizable - because it did not relate to the validity of the underlying convictions - then the two-year statute of limitations applicable to personal injury cases would run from the date the injury occurred. *Id.* The key inquiry for the Court, therefore, became whether the Plaintiff's excessive force claim pursuant to § 1983 would have implied the invalidity of his criminal conviction for violating Cleveland's resisting arrest ordinance.[8]

The Sixth Circuit reviewed the elements of Cleveland's resisting arrest ordinance to find that a conviction for resisting arrest **requires** that the underlying arrest be lawful. *Swiecicki*, 463 F.3d at 494. It further noted that it had previously analyzed, in the unpublished decision of *White v. Ebie*, No. 98-3958, 1999 WL 775914 (6th Cir. Sept. 24, 1999), the relationship between a conviction for resisting arrest pursuant to Ohio Revised Code § 2921.33 and a claim of excessive force pursuant to § 1983, and found that a conviction for resisting arrest necessarily includes a finding that the police officer did not

_____

[8]     The Court acknowledged that it had previously held, in the unpublished decision of *Hodge v. City of Elyria*, 126 Fed. Appx. 222 (6th Cir. 2005), that a claim of excessive force does not *always* relate to the validity of an underlying criminal conviction and, therefore, may be immediately cognizable. *Swiecicki*, 463 F.3d at 493. In other words, the *Swiecicki* decision recognized that *Heck* does not serve as a preclusion to all § 1983 claims where the defendant has been convicted or sentenced, but, rather, a court must look at the distinction between the unconstitutional act and the crime committed by the defendant. In *Hodge*, the Court found that the holding in *Heck* did not apply; therefore, plaintiff's § 1983 claim for excessive force was immediately cognizable which, in turn, meant that the statute of limitations accrued as of the date of the arrest. This was because, **unlike here**, the underlying criminal convictions were for drug possession and evidence tampering - convictions which the *Hodge* court held were wholly unrelated to a § 1983 claim for excessive force. *Hodge*, 126 Fed. Appx. at 225-26.

use excessive force.[9]  The *White* court concluded that White's arguments attacked an essential element of a resisting arrest offense: the lawfulness of the arrest.  Based on its prior conclusion in *White*, the *Swiecicki* court held that Swiecicki's excessive force claim  necessarily would have implied the invalidity of his conviction for resisting arrest - thus, *Heck* applied and the statute of limitations did not begin to run until Swiecicki's conviction was overturned.  *Swiecicki*, 463 F.3d at 494.

There was a caveat to the *Swiecicki* decision, however, which related to the timing and purpose of the alleged excessive force.  The rule that an arrest is not lawful under Ohio law if the arresting officer uses excessive force is applicable, according to the *Swiecicki* court, only where the force is claimed to have been used ***prior to*** the suspect's resistance.  *Id.*  If, prior to or in conjunction with any resistance by the defendant, the arresting officer uses excessive force, a § 1983 claim for excessive force will <u>not</u> stand independent of any underlying criminal conviction for resisting arrest.  *Heck*, therefore, would be a bar to the § 1983 action until the conviction is overturned because the § 1983 claim would be an attack on the underlying criminal conviction.

The Sixth Circuit, therefore, held it was also necessary - before applying *Heck* - to consider the nature and extent of any resistance; paying particular attention to whether the resistance occurred prior to the alleged use of excessive force.  *Swiecicki*, 463 F.3d at 494.  If the use of force allegedly predated or prompted the resistence, then *White* applies and the statute of limitations does not begin to run until there is a favorable termination under the *Heck* doctrine.  On the other hand, if the alleged use of force

---

[9]     Specifically, an arrest is not lawful, under Ohio law, if the arresting officer used excessive force. *White*, 1999 WL 775914 at *1.  Compare the Sixth Circuit's decision in *White* to its earlier decision in *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997), where the court held that the issue of a police officer's use of excessive force was not essential to a conviction for resisting arrest because, ***under Kentucky law***, the offense of resisting arrest does <u>not</u> require a finding that the police officer did not use excessive force in effecting the arrest.

-13-

by the arresting officer occurs later (say,  while being transported to the jail), a conviction for resisting

arrest would not be called into question, even if the defendant later recovered on a § 1983 excessive

force claim.  *Swiecicki*, 463 F.3d at 495.[10]  Importantly, however, the Court found that - for purposes

of determining whether *Heck* applied to a particular claim - the Court was required to consider the facts

with respect to the claimed excessive force as alleged by the defendant.

In Swiecicki's case, he claimed there was no physical resistance to the attempted arrest and that

the arresting officer used excessive force while effectuating the arrest.  *Swiecicki*, 463 F.3d at 492.  In

order to prevail on his § 1983 claim, therefore, *as he alleged it*, he would have to prove that the

arresting officer used excessive force without provocation.  *Swiecicki*, 463 F.3d at 495 (emphasis in

original).  Success on his § 1983 claim prior to the invalidation of his resisting arrest conviction, thus,

would necessarily imply the invalidity of that conviction - a result prohibited by *Heck*.  The court

concluded:

> The specific language of the Cleveland resisting-arrest ordinance
> (requiring that the arrest be lawful in order to convict) in combination
> with the applicable Ohio caselaw (where a finding of excessive force
> invalidates the lawfulness of an arrest) dictates the result here.
> Swiecicki's success on his excessive-force claim would therefore

---

[10]  *See also Conley v. City of Lorain*, 198 F.3d 244 (6th Cir. 1999) (Where a plaintiff
convicted of resisting arrest and assault on a police officer brings a § 1983 claim for
excessive force alleging that excessive force was used ***while effectuating the arrest***,
the claim is a challenge to the underlying criminal conviction and dismissal is
warranted based upon the reasoning of *Heck*); *compare to Sigley v. Kuhn*, 205 F.3d
1341 (6th Cir. 2000) (Where a plaintiff bringing a § 1983 claim for excessive force
does not dispute that a lawful attempt to arrest was made and that there was unlawful
resistance to that attempt, a § 1983 claim does not seek to invalidate the underlying
criminal conviction for resisting arrest because the plaintiff is attempting to prove
that the arresting officer used unreasonable and excessive force ***subsequent to*** the
arrest and resistance.  Nothing in that determination invalidates the underlying
criminal conviction for resisting arrest; therefore, *Heck* would not preclude such an
action.).

-14-

necessarily imply the invalidity of his Ohio state-court conviction for resisting arrest.

*Swiecicki*, 463 F.3d at 495.

In this case, precisely as in *White*, *supra*, Bruce Jackim was convicted under Ohio's resisting arrest statute, Revised Code § 2921.33, a conviction which the Sixth Circuit has said requires a finding that no excessive force was used. Plaintiffs deny there was any justification for the alleged excessive force used against Mr. Jackim. Indeed, Mr. Jackim testified that, "without warning, provocation, or any cause whatsoever," Officer Meadows became confrontational and aggressive, backhanded Mr. Jackim across the face, body slammed Mr. Jackim, and handcuffed one of Mr. Jackim's wrists - all while Mr. Jackim tried to hand him his identification. *Deposition of Bruce Jackim*, pp. 100-115. He clearly claims that the excessive force occurred before any purported resistance on the part of Mr. Jackim. *Deposition of Bruce Jackim*, pp. 110-125. In order to prevail on their § 1983 claim for excessive force, therefore, ***as they have alleged it***, Plaintiffs would have to prove that the arresting officer used excessive force on Mr. Jackim without provocation. *Swiecicki*, 463 F.3d at 495. The Court finds, based on Mr. Jackim's testimony and Plaintiffs' Amended Complaint, that Bruce Jackim's § 1983 excessive force claim falls squarely within the "favorable termination" rule of *Heck*. His claim is a direct attack on the lawfulness of the underlying arrest - which was an essential element of Mr. Jackim's resisting arrest conviction and would be an essential element of any subsequent conviction for that offense. It cannot be disputed that Plaintiffs' allegations are identical to those asserted by the unsuccessful plaintiffs in

-15-

*Swiecicki, supra,* and *Conley, supra, fn. 7,* and that they are, thus, barred.[11]

The fact that, as noted above, Mr. Jackim's convictions have since been reversed does not revive his claims. Mr. Jackim's conviction was reversed because the Court of Appeals concluded that the trial court had erred when it excluded a videotape proffered by the defendant on grounds that the chain of custody over the tape could not be established definitively. The state Court of Appeals ruled that, in the circumstances at issue there, the chain of custody issues involving the videotape went to the weight of the evidence, not its admissibility. The Court of Appeals remanded the matter for a retrial consistent with its evidentiary ruling relating to the tape. Significantly, the Court of Appeals did not question the sufficiency of the evidence to support the convictions and did not otherwise impugn the verdicts. The criminal charges remain pending and the state court is actively engaged in pretrial proceedings relating to those charges.

The Sixth Circuit has addressed the circumstances here - where criminal charges are pending and a § 1983 challenge is brought which, if successful, would necessarily imply the invalidity of a **future** conviction on those pending criminal charges. In *Wolfe v. Perry*, 412 F.3d 70 (6th Cir. 2005), the Court expressly held that *Heck* applies equally to such causes of action, barring § 1983 claims during the pendency of criminal proceedings relating thereto. *See also Gorenc v. City of Westland*, No. 02-2456, 2003 WL 21782610 at *2 (6th Cir. July 31, 2003) (*Heck* precludes § 1983 claims relating to

---

[11]    While the statute of limitations holding in *Swiecicki* has been reversed by the United States Supreme Court's recent decision in *Wallace v. Kato*, __ S.Ct. __ No. 05-1240, 2007 NL 517122 (Feb. 21, 2007), the reversal does not call into question the wisdom of (or controlling nature of) the Sixth Circuit's discussion of the circumstances under which *Heck* applies to an excessive force claim. While the Supreme Court found that *Heck* does not effect or toll, the running of the statute of limitations on applicable § 1983 claims, it reaffirmed the principle that *Heck* prohibits consideration of such claims whenever their resolution could impugn the integrity of state court criminal convictions. *Id*. at *4.

-16-

pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges); *Adams v. Morris*, No. 03-5413, 2004 WL 193219 (6th Cir. Jan. 29, 2003) (holding that plaintiff's § 1983 challenge to the effectiveness of his trial counsel while the state criminal proceedings were still pending to be barred by *Heck*); *Thomas v. Pugh*, No. 00-6155, 2001 WL 522437 (6th Cir. May 9, 2001) (finding a pre-trial detainee's § 1983 claim that he was denied a speedy trial to be barred by *Heck*); *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398 (6th Cir. 1999) (The concerns of *Heck* apply pre-conviction as well as post-conviction). For these reasons, the Court concludes that that Bruce Jackim's § 1983 claim for excessive force is barred by the criminal charge for resisting arrest pending against him.[12]

The Court finds, moreover, that Bruce Jackim's § 1983 excessive force claim would likewise fail in the face of the pending charges against Mr. Jackim for assault against a police officer. As with its analysis of the impact of a § 1983 claim for excessive force in the face of a criminal conviction or pending charges for resisting arrest, the Sixth Circuit has also analyzed the impact of a § 1983 claim for excessive force where one is convicted of or charged with assault on a police officer.

In *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), a civil rights claim was brought against Akron police officers for use of excessive force and illegal seizure under § 1983 following the plaintiff's conviction of third-degree assault upon a police officer. The Sixth Circuit held that *Heck*

---

[12]  This Court does not find that the Supreme Court's decision in *Wallace, supra,* alters the conclusion that consideration of Mr. Jackim's claim for excessive force, is barred at this time. While it is true that the rationale applied in reaching that conclusion differs post-*Wallace* - the decision to avoid resolution of those claims during pending criminal proceedings would be premised on concepts of abstention and the potential for a *Heck* bar, rather than a strict application of the principles in *Heck* - the fact remains that this § 1983 claim is not cognizable at this time. *See* this Court's more detailed discussion of *Wallace* at pp.53, *infra*.

-17-

precluded the excessive force claim because its success would imply the invalidity of the assault conviction entered pursuant to Plaintiff's state court guilty plea. *Cummings*, 418 F.3d at 682. The court reasoned:

> The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined.

*Id.*

Bruce Jackim's claim for excessive force in this case cannot move forward for the same reasons announced by the *Cummings* Court; specifically, because Mr. Jackim's assault conviction is still the subject of a state investigation and possible retrial, the potential for a *Heck*-bar counsels against continued litigation premised on the circumstances of that police encounter. These claims are interdependent, and it would be inappropriate for this Court to pass judgment on the excessive force claim while state court proceedings on his assault charges are ongoing.[13] The Court has already concluded that Bruce Jackim's § 1983 claim for excessive force is barred under the rationale of *Heck v. Humphrey*, (or, post-*Wallace*, is likely to become so barred). The reasoning of *Cummings v. City of Akron* likewise mandates that same result. The Court will address the procedural implications of these conclusions below, where it discusses in more detail the impact of the Supreme Court's recent decision in *Wallace v. Kato*, *supra*, at n.11.

---

[13]     *See also Ruiz v. Martin*, 72 Fed. Appx. 271 (6th Cir. 2003) (Where, during a major misconduct hearing, an inmate was convicted of multiple counts of assault on correctional facility officers, the "favorable termination rule" of *Heck* barred the inmate's ability to maintain a § 1983 claim against the officers for alleged excessive force resulting from the officers' attempts to restrain him. In essence, as here, the inmate was claiming that the officers' force was excessive because the inmate had done nothing to provoke the force. The Court found that the inmate's claim for excessive force would, therefore, necessarily require  invalidation of the assault judgment.).

## 2. **Excessive Force - Nina Jackim**

During the course of this litigation, Plaintiffs filed their own Motion for Summary Judgment on their § 1983 excessive force claim.  Plaintiffs' Motion  was denied.  *See Order dated September 29, 2006*.  That Motion did not explicitly seek judgment as a matter of law on any claims made by Nina Jackim with respect to the allegations of excessive force.  Plaintiffs' Motion focused, rather, on the purported excessive force used in effectuating Bruce Jackim's arrest.[14]  Sam's Club has, nevertheless and understandably, briefed the issue of whether Nina Jackim even has a viable § 1983 claim for excessive force in light of her own deposition testimony.

Sam's Club points to the following testimony given by Nina Jackim:

Q:     Do you believe that anyone from Sam's Club used excessive force against you?

A:     No.

*Deposition of Nina Jackim, p. 73.*  The Court has further reviewed Mrs. Jackim's deposition testimony, only to find the following affirmation:

Q:     So you're still claiming that you were unreasonably seized; it just didn't involve excessive force?

A:     Correct.

*Id.*  The same line of questioning was asked and (candidly) answered with respect to the remaining named defendants in this action:

Q:     Do you believe that anyone from the City of Brooklyn, and that includes Officer Meadows, used excessive force against you?

A:     No.

_____

[14]     Indeed, Plaintiffs have focused their arguments throughout this case on the issues surrounding *Bruce Jackim's* arrest and state court trial - including the propriety of Mr. Jackim's criminal convictions.

-19-

* * *

A.    I do not believe that Officer Meadows used excessive force against me.

* * *

Q.    Do you know of anyone who was associated with this incident in its entirety that is employed by the City of Brooklyn that used excessive force against you?

* * *

A.    I understand your question.

* * *

A.    And I want to answer.  In my idea of what is excessive force, no.

*Deposition of Nina Jackim, pp. 110-112.*  On the basis of this testimony, elicited while defended by counsel, it is hard for this Court to believe Nina Jackim intends to continue pursuing a Cause of Action for excessive force under § 1983.

Plaintiffs have opted not to respond to the partial Cross Motion filed by Sam's Club; therefore, the testimony highlighted by Sam's Club is the only relevant evidence before the Court for purposes of Sam's Club's partial Cross Motion.  Plaintiffs presumably do not dispute the truthfulness of Mrs. Jackim's own deposition testimony.  Nor have Plaintiffs identified any specific incidence of excessive force used against Mrs. Jackim, either  in the Amended Complaint or otherwise.  Because there simply is no evidence that any law enforcement officer used excessive, or objectively unreasonable, force during the detention of Mrs. Jackim, and because there is no evidence of a ***specific injury*** suffered by Mrs. Jackim as the result of any purported force, Nina Jackim's § 1983 claim for excessive force is dismissed **with prejudice**.

### 3.  Unreasonable Seizure - Bruce Jackim

As with their § 1983 claims for excessive force, Plaintiffs sought judgment as a matter of law on their § 1983 claims for unreasonable seizure.   In their Motion, Plaintiffs continually - and aggressively - argued they were arrested without probable cause.  Because of this, Sam's Club contends Bruce Jackim's claim of "unreasonable seizure" is really a claim of wrongful arrest.  Sam's Club argues

-20-

Plaintiffs are directly attacking the probable cause for Mr. Jackim's detention, which is an issue that was litigated fully in the state court criminal trial proceedings and is now subject to re-litigation.  Plaintiffs do not dispute this characterization of this claim.

Again, Plaintiffs' claims run up against the *Heck* rule.[15]   Plaintiffs' claim regarding Mr. Jackim's alleged "unlawful seizure" was ***specifically cited*** by the Supreme Court as an example of a § 1983 action that does not seek damages directly attributable to conviction or confinement, but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful.  The *Heck* decision, *supra*, explicitly noted that a conviction for the crime of resisting arrest, where "defined as intentionally preventing a peace officer from effecting a lawful arrest," would preclude a subsequent suit under § 1983 for violation of the right to be free from unreasonable seizures because proof of the lawfulness of the arrest is an element of the crime.  *Heck, supra,* 512 U.S. at 487, n.6.

Construing Plaintiffs' allegations as a claim for "wrongful arrest" would likewise not be of assistance to Plaintiffs.  Bruce Jackim was convicted of resisting arrest pursuant to Ohio Revised Code § 2921.33, which provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."   *See* O.R.C. § 2921.33.   Plaintiffs' arguments regarding the "wrongfulness" or unreasonableness of Mr. Jackim's seizure, therefore, attack an essential element of a resisting arrest offense: the lawfulness of the underlying arrest.  *See White, supra,*1999 WL 775914 at *1.  Such a claim asserted under § 1983 where the plaintiff's conviction for resisting arrest has not been overturned  or charges for the same remain pending clearly violates the prohibition (whether arising from *Heck* or principles of abstention) against "parallel litigation over the issues of probable

---

[15]     Again, whether it is *Heck* or, as the Supreme Court discussed in *Wallace*, the need for abstention because *Heck* might come into play at some later point in time, that counsels against continued litigation of these claims, the result is the same.

cause and guilt."

For all of these reasons, the Court finds that Bruce Jackim's § 1983 claim for unreasonable seizure is not cognizable at this time.  Again, the Court discusses the procedural implications of this conclusion, and the effect of the *Wallace* decision on it, below.

### 4.  <u>Unreasonable Seizure - Nina Jackim</u>

In the Amended Complaint, Plaintiffs assert  that "by seizing, striking, tackling, restraining, and/or incarcerating Plaintiffs, the actions of said Defendants ... deprived the Plaintiffs of their right to be free from unreasonable seizures as secured by the Fourth Amendment ... ."  *Amended Complaint*, ¶26.  Sam's Club points out that Plaintiffs have argued - in briefing on their Motion for Summary Judgment - that **both** Bruce Jackim and Nina Jackim were arrested "without probable cause" in violation of the Fourth Amendment.  Sam's Club contends, however, that Nina Jackim does not have a viable claim for unreasonable seizure or wrongful arrest in light of her admitted plea of "no contest" to attempted disorderly conduct.[16]  *See Deposition of Nina Jackim*, p. 50.

The Sixth Circuit  previously has determined that a "no contest" plea by a criminal defendant in state court operates as a bar to a subsequent civil action in federal court where the federal civil action essentially asserts there was no probable cause for the arrest.  In *Walker v. Schaffer*, 854 F.2d 138 (6th Cir. 1988), the plaintiff in a federal § 1983 action pled "nolo contendere" (no contest) to a criminal charge of disorderly conduct in state court.  The defendants asserted qualified immunity against the plaintiff's subsequent civil rights claim for false arrest. The district court denied the defendants' motion for summary judgment on their defense of qualified immunity because it determined there was a

---

[16]     A "no contest" plea is an admission of the truth of the facts underlying the criminal charges.  *Walker v. Schaffer*, 854 F.2d 138, 153 (6th Cir. 1988) (*citing State v. Pernell*, 47 Ohio App. 2d 261 (Cuyahoga Cty. 1976)).

-22-

genuine dispute about the facts of the incident; therefore, it was unable to determine "whether a reasonable officer would have known that he had no probable cause to arrest." *Walker*, 854 F.2d at 140-41.

The Sixth Circuit reversed the district court, holding the plaintiff was precluded in the first instance - under a collateral estoppel theory rather than res judicata - from bringing a claim under § 1983 on the theory that the underlying arrest was without probable cause.[17]  *Walker*, 854 F.2d at 142. The Court discussed the well-recognized principle that:

> A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state.

*Id.* (citing *Migra v. Warren City School District Bd. of Ed.*, 465 U.S. 75, 85 (1984)).  The Court also noted that:

> Giving preclusive effect to state court judgments is ... inappropriate where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.

*Id.*  In Walker's case, however, there was no indication that, in state court, the plaintiff - then represented by counsel - was not given the choice of a "full and fair opportunity" to litigate the charge of disorderly conduct.  The Court held, therefore:

> Insofar, then, as the cause of action under § 1983 is based on claims of

---

[17]     Res judicata, or claim preclusion, prevents a plaintiff from suing on a claim that has already been decided.  Collateral estoppel, or issue preclusion, occurs when the second lawsuit is "collateral" to the first (i.e., not the same claim as the first lawsuit). Issue preclusion applies equally to civil rights actions as to issues actually litigated, as well as to issues which could have been but were not litigated in the state court proceeding. *Walker*, *supra*, 854 F.2d at 142.  As a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case. *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).

> false arrest ... or unlawful detention ... plaintiffs are estopped from
> pursuing those claims ...

*Walker*, 854 F.2d at 142-43.[18]

Here, Nina Jackim is attempting to do that which Ohio law forbids: agree to enter into a "no

contest" plea and admit to the truthfulness of the facts of the attempted disorderly conduct charge, while

purporting to reserve the right to later assert - in a federal civil rights action - that the police officers

acted without probable cause in detaining her.  This Court has adhered to the preclusion doctrine

established by *Walker* in a situation identical to this.  In *Deir v. City of Mentor*, No. 03-2232, 2005 WL

2416919 (N.D. Ohio Sept. 30, 2005), the undersigned dismissed - with prejudice - the plaintiff's claims

of unreasonable seizure, deprivation of liberty, and unlawful restraint (all asserted under § 1983)

pursuant to the reasoning of *Walker*.  There, as here, the plaintiff asserted he was seized and arrested

for disorderly conduct without probable cause.  The Court adopted the recommendation of Magistrate

Judge Patricia Hemann in finding:

> Whether he [Deir] pled "guilty" or "no contest," which is disputed

---

[18]    The Court recognized the potential interplay between its decision and Rule 410 of the
Federal Rules of Evidence, which prohibits evidence of "a plea of nolo contendere"
from being "admissible against the defendant who made the plea" in any civil or
criminal proceeding.  The court held, however, that Rule 410 only applies where the
use of the nolo contendere plea is being held against the pleader in a subsequent civil
or criminal trial in which the pleader is a ***defendant*** - such as where the plea is being
used to impeach the pleader.  *Walker, supra*, 854 F.2d at 143.  Where the person who
entered the plea is a plaintiff in a civil action, the concerns of Rule 410 do not apply
because use of the plea for estoppel purposes is not "against the defendant" within
the meaning of Rule 410.  "Rule 410 was intended to protect a criminal defendant's
use of the nolo contendere plea to defend himself from future civil *liability*." *Id.*
(emphasis in original); *see also McCartt v. Keyes*, 194 F.3d 1313 (6th Cir. 1999)
(applying *Walker* to hold that the plaintiff's "nolo contendere" plea to a charge of
disorderly conduct precluded him from later bringing a claim under § 1983 for
unreasonable seizure where his federal civil action was based on allegations that his
arrest for disorderly conduct was without probable cause).

-24-

> between the parties, has no bearing in this case. The uncontested fact is that Plaintiff *was convicted* of disorderly conduct [under his plea].  That fact necessarily establishes probable cause.  Plaintiff is, therefore, barred from asserting that the Defendants acted without probable cause, whether he makes that assertion under federal law or state law.
>
> Being unable to show that the officers acted without probable cause, Plaintiff cannot establish the first element of a § 1983 claim premised on his arrest.  As such, Plaintiff's federal claims of unreasonable seizure (Count One), deprivation of liberty (Count Two), and unlawful restraint (Count Three) cannot stand and must be dismissed.

*Dier*, 2005 WL 2416919 at *5 (emphasis in original).[19]

In the underlying criminal proceedings, Nina Jackim was represented by counsel when she made an informed decision to enter a plea of "no contest" to attempted disorderly conduct.  *Amended Complaint*, ¶ 18.  She is, therefore, collaterally estopped from asserting a § 1983 claim for unreasonable seizure on the basis that the arresting officer lacked reasonable suspicion or probable cause to seize her.[20]  Her "no contest" plea to attempted disorderly conduct conclusively admits to the probable cause

---

[19]  *Walker, McCartt, and Dier* do not contradict the decision issued by the Northern District of Ohio in *Dye v. City of Warren*, 367 F. Supp. 2d 1175 (N.D. Ohio 2005, Wells, J.).  In that case, the court allowed a § 1983 action to go forward despite the plaintiff's prior "no contest" plea for disorderly conduct.  Unlike the cases cited in this Opinion, however, the plaintiff in *Dye* was **not contesting** probable cause for each of the two traffic stops underlying his arrest.

[20]  *See Hastings v. Hubbard*, No. 03-131, 2006 WL 1705202 (S.D. Ohio June 16, 2006) (Where the plaintiff who entered a "no contest" plea to failure to comply with an order of a police officer was represented by counsel during his plea hearing, he had a "full and fair opportunity" to litigate certain factual issues; therefore, his Fourth Amendment claims under § 1983 were barred.  The issues of reasonable suspicion and probable cause were factual issues necessary under Ohio law to support the underlying plea and were conclusively resolved - although not actually litigated - by his plea.); *see also Daubenmire v. City of Columbus*, 452 F. Supp. 2d 794 (S.D. Ohio 2006) (holding that individuals who pled "no contest" in state court to open burning charges were precluded from bringing a § 1983 action to relitigate claims that there was no probable cause for their arrests).

for - and, thus, the lawfulness of - her seizure.  Sam's Club's request  for summary judgment is **GRANTED**, and Nina Jackim's § 1983 claim for unreasonable seizure is dismissed **with prejudice**.[21]

## IV.    BROOKLYN DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

For the identical reasons articulated by Sam's Club, the Brooklyn Defendants - in their Cross Motion for Summary Judgment filed on May 3, 2006 - seek to dismiss Plaintiffs' § 1983 claims of unreasonable seizure and excessive force. They further request judgment as a matter of law on Plaintiffs' remaining claims of equal protection, conspiracy,  respondeat superior, negligent training, and reckless infliction of emotional distress.  The individual officers and also seek judgment on qualified immunity grounds.

Again, rather than respond to the arguments made by the Brooklyn Defendants, Plaintiffs simply claim "there is no record of a suit pending against the Plaintiffs in this court," and that "the only litigation which is on record is between the parties in the instant case filed against the Defendants by the Plaintiffs."  Plaintiffs assert, therefore, that because "Defendants are in a defensive posture in opposition to Plaintiffs' civil rights claims," they have not "invoked the jurisdiction of this court to litigate and to judicially resolve a certain claim against the Plaintiffs."

For the same reasons articulated earlier in this Opinion, the Court - in an Order dated December

---

[21]    While her claim would also be barred under the principles of *Heck* which were discussed in detail previously, the collateral estoppel bar is sufficient standing alone to justify judgment in favor of Defendants on Mrs. Jackim's claims.

-26-

18, 2006 - held that the Brooklyn Defendants' Cross Motion would be treated as ***unopposed.***[22]  (*See* Doc. No. 118.).   The Court, nevertheless, will address each of the arguments raised by the Brooklyn Defendants in their Cross Motion for Summary Judgment.

### A.      Plaintiff Bruce Jackim's § 1983 claims for wrongful arrest and excessive force.

Like Sam's Club's assertion that Bruce Jackim's § 1983 claim of unreasonable seizure/wrongful arrest is barred by the principles of *Heck*, the Brooklyn Defendants' motion, on the same grounds, is similarly well-taken.  For the reasons discussed at length above, moreover, Bruce Jackim's § 1983 claim of excessive force  is also barred from consideration by his pending charges for assaulting a peace officer and resisting arrest.   As before, the Court defers its discussion of the procedural effect of these conclusions until later in this opinion.

### B.      Nina Jackim's wrongful arrest and excessive force claim.

Applying the same analysis set forth above with respect to Sam's Club's request for dismissal of Nina Jackim's § 1983 claims of unreasonable seizure/wrongful arrest and excessive force, the Court finds the Brooklyn Defendants' request - argued on identical grounds - similarly well-taken.  Plaintiffs have not filed an opposition to the Brooklyn Defendants' Cross Motion, and the dismissal request has substantive merit.  The Court, therefore, affirms its earlier dismissal **with prejudice** of Nina Jackim's § 1983 claims of unreasonable seizure/wrongful arrest  and excessive force to include those claims as

---

[22]      Plaintiffs likewise attempted, more than five months after the Brooklyn Defendants filed their Cross Motion, to seek leave to oppose the Cross Motion.  As with Plaintiffs' request for leave to oppose the partial Cross Motion filed by Sam's Club, the Court found that Plaintiffs had not offered any legitimate basis for granting such an extremely belated leave.

asserted against the Brooklyn Defendants.[23]

> **C.      Plaintiffs' complaints regarding the alleged unfairness of Bruce Jackim's criminal trial.**

As with Sam's Club, the Brooklyn Defendants have pointed out that Plaintiffs' repeated complaints regarding the alleged denial of a fair criminal trial before an impartial state court judge should be denied because no such Cause of Action has been asserted in the Amended Complaint.  They further argue that any such "claim" is more properly asserted against the state court judge and prosecutor (if assertable at all) -  not the Brooklyn Defendants, who were not involved in prosecuting the underlying criminal charges.  For the reasons discussed previously in this Opinion, as well as in the Court's prior Orders in this case, there is nothing substantively for this Court to consider as it relates to Plaintiffs' repeated contentions regarding an "unfair trial."  *See Fn.3, supra.*

> **D.      Plaintiffs' equal protection claims.**

Count One of Plaintiffs' Amended Complaint attempts to assert a cause of action for "Deprivation of Civil Rights: Equal Protection."  In support, Plaintiffs allege:

> By seizing, striking, tackling, restraining, and/or incarcerating Plaintiffs, the actions of said Defendants, as described more fully herein, deprived the Plaintiffs of their right to the equal protection of the law as secured by the Fourteenth Amendment to the United States Constitution and were in violation of 42 U.S.C. § 1983.

---

[23]      The Brooklyn Defendants go one step further than Sam's Club by pointing to certain deposition testimony and arguing that this testimony establishes there was probable cause for Nina Jackim's arrest.  The Court need not, however, analyze whether there is a genuine issue of material fact with respect to whether a reasonable officer would have cause to believe that Nina Jackim was in the process of committing - or had committed - a crime.  This is because her § 1983 claim for unreasonable seizure simply is not cognizable for the reasons stated previously in this Opinion.

*Amended Complaint*, ¶22.[24]  The Brooklyn Defendants argue they are entitled to summary judgment on

Count One for the obvious reason that Plaintiffs have not alleged they were denied equal protection of

the law based on a racial or other class-based animus.  By failing to timely respond to the Cross-Motion

with any legally supportable reason for their extensive delay, Plaintiffs have likewise failed to offer any

evidence in support of their equal protection claims (other than the general allegations in the Amended

Complaint).[25]

The Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly

situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439

(1985).  A plaintiff cannot, however, sustain an equal protection claim without showing that a state

actor intentionally discriminated against him or her on the basis of membership in a protected class (i.e.,

race, religion, gender, disability or age).  Being a member of a protected class is a prerequisite to a §

1983 claim for violation of the Equal Protection Clause:

> To state a claim for a constitutional violation under the equal protections
> clause of the Fourteenth Amendment, "a § 1983 plaintiff must allege that
> a state actor intentionally discriminated against the plaintiff because of
> membership in a protected class."

*Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000) (quoting *Henry v. Metropolitan Sewer Dist.*, 922

---

[24]     On its face, there is nothing in this assertion which, even if established, necessarily
would invalidate either Mrs. Jackim's existing convictions or any potential future
convictions of Mr. Jackim.  The Court accordingly, concludes that there is no *Heck* -
based bar to a consideration of this claim, and, thus, proceeds on the merits.

[25]     Again, it bears repeating that Plaintiffs' position, simply, is that the Court has no
jurisdiction to rule on the Cross Motions for Summary Judgment because they were
filed by Defendants to the action.  The Court need not address the validity of that
contention in any detail; it is absurd on its face.

F.2d 332, 341 (6th Cir. 1990)); *accord Washington v. Davis*, 426 U.S. 229 (1976).  The Sixth Circuit

has further explained the fundamental requirement of class membership:

> Because Plaintiff failed to allege invidious discrimination based upon his
> membership in a protected class, his equal protection claim fails at the
> inception.  In order for Plaintiff's claim to survive Defendants' motion,
> Plaintiff had to allege that he was denied equal protection of the law
> based upon an unjustifiable standard such as race, religion, or other
> arbitrary classification.  As explained by the Court of Appeals for the
> Seventh Circuit ..., "[a] person bringing an action under the Equal
> Protection Clause must show intentional discrimination against him
> because of his membership in a particular class, ***not merely that he was
> treated unfairly as an individual***."

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)(internal citations omitted)(emphasis added).

A thorough review of the Amended Complaint makes it clear that Plaintiffs' equal protection

claims are deficient.  Nowhere have Plaintiffs alleged they were intentionally discriminated against on

the basis of race or any other identifiable class.  Nor have they come forward with any evidence of

intentional discrimination based on membership in a protected class.  The failure of Plaintiffs to allege -

or provide any evidence of - such basic elements is fatal to their equal protection claims.

Indeed, deposition testimony elicited from Plaintiffs indicates ***Plaintiffs themselves*** do not

believe they were denied rights based upon membership in any protected class and do not believe that

their treatment - however inappropriate they believe it to be - was prompted by an invidious

discriminatory animus.

Testimony of Bruce Jackim:

Q:      And you believe Miss Keller's motivation for singling you out was the previous
        disagreement that you had with her?

A.      Correct.

Q.      As opposed to your membership in any particular racial or ethnic class or -

-30-

A.      For that part, yes.

*Deposition of Bruce Jackim*, p. 325.

> Testimony of Nina Jackim:

Q:      Now, do you feel that Sam's Club violated your civil rights?

A.      Yes.

Q.      How so?

A.      By not providing a safe environment for me, a member of Sam's Club, to shop.  Also, by employing as a security officer, Danny Meadows.

Q.      Are you alleging that Sam's Club did that because you're a member of a protected class or a noted minority?

A.      No.

*Deposition of Nina Jackim*, p. 71.

This testimony confirms that Plaintiffs do not believe they were "singled out" because of membership in a racial or other suspect class.  Plaintiffs have declined to rebut this evidence; indeed, they have declined to present any argument or evidence whatsoever on this issue.  The Court finds, therefore, that Plaintiffs' claims that they were deprived of the right to equal protection fail.  Plaintiffs simply have not alleged nor raised a material issue of fact with respect to the very essence of an equal protection claim: that Defendants' actions were prompted by Plaintiffs' membership in a protected class.  Summary judgment on Plaintiffs' equal protection claims is warranted, and Count One of the Amended Complaint is dismissed **with prejudice** as to all Defendants.[26]

---

[26]     While the Court discusses this issue in the context of the Brooklyn Defendants' Cross Motion for Summary Judgment, Sam's Club has raised the same issue - with no substantive opposition from Plaintiffs in its own Motion for Summary Judgment, referenced below.  The Court's conclusions, based on Plaintiffs's own descriptions of the events at issue, apply equally to that Defendant as well.

E.    Plaintiffs' § 1983 conspiracy claims.

In Count Three of the Amended Complaint, Plaintiffs allege:

> 29.    Each and every named defendant herein conspired to deprive Plaintiffs of their civil rights, in violation of 42 U.S.C. § 1983.
>
> 30.    On information and belief, as part of the conspiracy, the individually named Defendants herein conspired to charge Plaintiffs with criminal charges and/or destroy evidence, to wit: a Sam's Club security videotape.
>
> 31.    The conduct of each and every defendant herein was action under the color of state law within the meaning of the Civil Rights Act, 42 U.S.C. § 1983.

*Amended Complaint*, ¶¶ 29-31.  The Brooklyn Defendants argue that these allegations are insufficient as a matter of law to sustain a civil conspiracy claim under § 1983.  Plaintiffs have proffered nothing in further support of this claim, again declining to respond to Defendants' attack on their sufficiency.

In this Circuit, the standard for proving a § 1983 claim for conspiracy has been defined in the same manner as a general civil conspiracy claim:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *see also Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).  Conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts will be insufficient to state a claim.  *Gutierrez v.*

-32-

*Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Specifically, as to a § 1983 civil conspiracy claim, a plaintiff must come forward with factual allegations showing:

1.    The existence of a conspiracy;

2.    An actual deprivation of a right secured under the Constitution by persons acting under the color of state law.[27]

*See Abdullah v. Harrington*, 37 F.3d 1498, 1994 WL 532932 at *2 (6th Cir.1994 ) (citing *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982), where the court held: "[s]ection 1983 does not ... punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."); *see also Flagg Brothers v. Brooks*, 436 U.S. 149 (1978) (To sustain a § 1983 claim, a plaintiff must establish that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under color of state law.").

While the Brooklyn defendants attack Plaintiffs' civil conspiracy claims on a number of grounds, the Court finds that its conclusions with regard to Plaintiffs other § 1983 claims drive its conclusions here as well.  Specifically, the Court finds that Nina Jackim's § 1983 conspiracy claim must be dismissed <u>with prejudice</u> and that consideration of Bruce Jackim's § 1983 conspiracy claim is, except to the extent noted below, barred by *Heck*, or *Heck*-related considerations, at this stage of the

---

[27]    The Brooklyn Defendants contend that Plaintiffs must further prove that the defendants acted with a "specific intent" to deprive Plaintiffs of their civil rights.  In support, they cite *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972).  The Sixth Circuit in that case, however, ***disagreed*** with the "specific intent" requirement imposed by the district court and overturned the lower court's dismissal on those grounds - finding there is no scienter requirement for a conspiracy claim asserted under federal civil rights statutes.  That case, therefore, stands for the exact opposite of what the Brooklyn Defendants have cited it for.

-33-

proceedings.

Mrs. Jackim's claims of unreasonable seizure/wrongful arrest, excessive force and violation of her right to equal protection of the laws have all been dismissed with prejudice, for the reasons discussed above. Those claims are the only civil rights violations reflected in the Amended Complaint and, thus, are the only civil rights violations upon which her § 1983 conspiracy claim possibly could be predicated.  Because those individual civil rights claims all fail as a matter of law, so too must her conspiracy claims.  There is no such thing as a "conspiracy in the air" - it must be predicated on an underlying civil rights violation.  Here, there is no such violation for which a cause of action can be sustained as to Nina Jackim.

Bruce Jackim's conspiracy claim also rises or fails on this ability to assert and establish an underlying constitutional violation.  Thus, to the extent Mr. Jackim's conspiracy claim purports to be predicated on an alleged equal rights violation, that claim must be dismissed with prejudice because the Court has already found, as a matter of law,  that no such equal rights violation can be sustained on the record presented.   To the extent Mr. Jackim's conspiracy claim is predicated on his unreasonable seizure/wrongful arrest claim, that claim faces the same *Heck*-based bar that prohibits consideration of the underlying claim.[28]

Thus, given the Court's conclusions above, Bruce Jackim's conspiracy claims must either be

_____

[28]     There is nothing in either the Amended Complaint or in any filings submitted by the Plaintiffs that indicates that Mr. Jackim asserts there was a conspiracy to impose excessive force upon him during his arrest.  Indeed, the speed with which events relating to his arrest unfolded would logically exclude the possibility of concerted action with respect to that alleged civil rights violation.

-34-

dismissed, or subject to the procedural analysis set forth below.[29]

    **E.**     **The Officers' claims of qualified immunity.**

In addition to attacking the merits of Plaintiffs' federal civil rights claims, the Brooklyn Defendants articulate several reasons why they assert the City of Brooklyn, and its governmental officials, cannot be held liable for any potential damages under § 1983.  First is the defense of qualified immunity asserted on behalf of the individual City of Brooklyn police officers involved in the arrests of Nina and Bruce Jackim, Officers Meadows, and Albany.

Individual liability may be imposed pursuant to § 1983 upon government officials personally involved in an infringement upon a right protected by federal statute or the constitution.  *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).  In order, however, to allow government officials to perform their discretionary duties without constant fear that each time they act they will be forced to defend themselves in a civil suit, the law shields government officials from § 1983 liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  The doctrine is known as "qualified immunity."  It is an entitlement not to stand trial, not merely a defense from

---

[29]    Plaintiffs also seem to premise their § 1983 conspiracy claim on their assertion that the parties conspired to destroy the Sam's Club security videotape that depicted Plaintiffs' arrest.  Not only have Plaintiffs failed to present evidence of any agreement between the parties to engage in such conduct, but it seems that the claim of destruction is just not true.  There is no dispute that the tape exists and that the Plaintiffs themselves both have been in possession of it since the criminal trial and have proffered it as substantive evidence in that proceeding.  Given these facts, the Court finds that no § 1983 claim can be predicated upon, to use Plaintiffs' words, "the tape issue."

liability.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).[30]

The Supreme Court has recognized the doctrine of qualified immunity in § 1983 cases.  *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996).  The measure is an objective one; the Court looks to whether the official's actions were objectively reasonable in light of clearly established law at the time of the alleged violation, and the information possessed by the official.  *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987).[31]  An official's actions are not objectively reasonable if law existing at the time of the alleged violation makes apparent the unlawfulness of the official's acts.  *Id.*  Mere negligence, however, is insufficient to refuse the privilege because: "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present ... in such cases, those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable."  *Id.*  Qualified immunity, thus, generally protects "all but the plainly

---

[30]     Plaintiffs have alleged in their Amended Complaint that Officers Meadows and Albany "are hereby sued both in their personal capacity and official capacity." *Amended Complaint*, ¶ 5.  The Brooklyn Defendants have briefed the issue of qualified immunity as it relates to any § 1983 claims brought against Officers Meadows and Albany in their ***individual*** capacities, but have not briefed the issue of any § 1983 claims brought against Officers Meadows and Albany in their ***official*** capacities.  This is presumably so because any federal § 1983 claim brought against Officers Meadows and Albany in their official capacities are subsumed within the § 1983 claims Plaintiffs have brought against the City of Brooklyn.  Official capacity suits are construed as brought against the entity itself because a judgment against an individual in his official capacity imposes liability upon the entity he represents.  *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *see also Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690, n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

[31]     *See also Long v. Norris*, 929 F.2d 111, 1115 (6th Cir. 1991) (the objective reasonableness test "focuses on whether an official, given the facts that the official knew or reasonably should have known about the situation, should have known that his or her particular conduct would not pass scrutiny when applied to the law.").

-36-

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The plaintiff bears the ultimate burden of proving that a government official is not entitled to qualified immunity. *See Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Whether the plaintiff has met this burden is a question of law. *See Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997); *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987). The relevant two-pronged inquiry to be utilized in this case is:

1.  Whether the facts alleged show that the conduct of Officers Meadows and Albany violated a clearly established constitutional right; and,

2.  Whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances and in the situation confronted by Officers Meadows and Albany in this case.

*See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

The Brooklyn Defendants, in their Cross Motion, point to testimony in the record - and to the convictions of Bruce and Nina Jackim - which they contend prove there was probable cause for the actions taken by Officers Meadows and Albany with respect to both Bruce and Nina Jackim. They further argue this same evidence indicates that, given the facts known by Officers Meadows and Albany at the time of the arrests, no reasonable police officer faced with the same facts and circumstances would - or should - have known that the detention and arrest of Plaintiffs violated any constitutional right.

With respect to the § 1983 claims made by Nina Jackim, the Court previously discussed its reasons for finding that Nina Jackim does not have a valid Cause of Action for ***either*** unreasonable seizure or excessive force under § 1983. Because those claims have been dismissed with prejudice, an analysis of whether Officers Meadows and Albany are entitled to qualified immunity on those claims is unnecessary. Similarly, a qualified immunity analysis need not be applied to the equal protection

-37-

claims asserted by both Nina and Bruce Jackim or to the conspiracy claims asserted by Nina Jackim, or by Bruce Jackim to the extent premised on either his excessive force or equal protection claims, as these claims likewise have been dismissed with prejudice earlier in this Opinion.

Because Bruce Jackim's § 1983 claims of unreasonable seizure and excessive force and, to the extent remaining, his conspiracy claim are barred from consideration at this time, the Court finds that it would be inappropriate to consider whether Officers Meadows and Albany are qualifiedly immune with respect to such claims. The Court finds that such an analysis - like the merits analysis of Mr. Jackim's claims themselves - would be inextricably intertwined with that to be undertaken by the state trial court on the pending retrial of Bruce Jackim's criminal convictions for resisting arrest and assault on a police officer.  The Court, therefore, makes no findings at this time as to the viability of the Officers' claims of qualified immunity vis-a-vis any claim which Bruce Jackim may be able to assert after his retrial.

**F.      The *Monell* and Respondeat Superior Claims.**

Count Six of Plaintiffs' Complaint is captioned  a "Monell Claim."  Count Seven of Plaintiffs' Complaint is captioned "Respondeat Superior."  Both Counts are brought against the City of Brooklyn. The City contends that, under these Counts, Plaintiffs seek to impose § 1983 liability on the City of Brooklyn for the isolated acts of non-policymaking individuals employed by the City without pointing to any custom, policy or practice of the City that directly led to - or was the moving force behind - any alleged constitutional violation.

42 U.S.C. § 1983 does not impose vicarious liability upon a municipality for its agents' alleged constitutional torts. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691-94 (1978).  The doctrine of respondeat superior, therefore, is inapplicable in § 1983 actions. *Id.; see also Pembaur v. City of*

-38-

*Cincinnati*, 475 U.S. 469, 478 (1986).  Mere employment of an individual does not make the municipality liable for the allegedly unconstitutional acts of that individual.  Rather, "it is [only] when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694 (emphasis added).  Simply put, to impose § 1983 liability upon a local government body, a plaintiff must show that the ***municipality itself*** is the wrongdoer.  *Collins v. City of Harker Heights,* 503 U.S. 115, 122 (1992); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985)(Brennan, J., concurring) (to recover against a city under § 1983, a plaintiff must show that their constitutional rights were violated through "some particular action taken by the city, as opposed to an action taken unilaterally by a non-policymaking municipal employee."); *Pembaur*, *supra*, 475 U.S. at 480 ("[r]ecovery from a municipality is limited to acts ... which the municipality has officially sanctioned or ordered").

Here, based on their claims, Plaintiffs must establish "an officially executed policy, or the toleration of a custom" within the City of Brooklyn.  *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir. 1996).  A "custom" for these purposes "must reflect a course of action deliberately chosen from among various alternatives."  *Doe*, 103 F.3d at 508 (citing *City of Oklahoma*, *supra*, 471 U.S. at 823).  Where the accused policy or custom is facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice."  *Brown*, 520 U.S. at 407 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Alleged deficiencies in training government personnel must meet this standard, showing that the alleged failure to train was the result of deliberate indifference to the known or obvious consequences of that failure.  *Stemler v. City of Florence*, 126

F.3d 856, 865 (6th Cir. 1997).[32]

Plaintiffs must further demonstrate that, through its deliberate conduct,  policies of the City of Brooklyn were the **moving force** behind the injuries they have alleged before liability can be assessed against the City under § 1983.  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(official policy must be the "moving force" behind the constitutional violation).  In essence, Plaintiffs must show that the alleged municipal action  or inaction, was taken with the requisite degree of culpability, and must further demonstrate a direct causal link between the municipal conduct and the deprivation of federal rights.  *Board of County Comm'rs*, 520 U.S. at 404.

Applying these principles, the Court finds that Plaintiffs have failed to sufficiently plead - or prove - their § 1983 claims against the City of Brooklyn.  At the pleading stage, Plaintiffs must at least allege that the City has an established custom or policy of inaction and/or toleration of constitutional violations which allows its police officers to abuse arrested individuals, and that this custom or policy

---

[32]    Indeed, although inadequate training of police officers can be characterized as the cause of a constitutional tort, the inadequate training must amount to "deliberate indifference to the rights of persons with whom the police come into contact with." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  This occurs only when the need for more or different training: "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.  Deliberate indifference "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to the alleged violation. *Doe v. Claiborne County*,103 F.3d 495, 508 (6th Cir. 1996).  It is, rather, "a stringent standard of fault." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997).

of inaction was the moving force behind Plaintiffs' injuries.[33]  Plaintiffs have failed to sufficiently plead "custom or usage," however, and have simply pointed to one event - and relied upon the doctrine of respondeat superior - as the basis for imposing liability upon the municipal defendant.  They have also neglected to come forward with ***any evidence at all*** of an official policy or custom within the City of Brooklyn of arresting individuals without probable cause, or of a widespread pattern of tolerating the use of excessive force against suspects.  They have not, therefore,  shown that there is an established custom or policy of inaction or toleration on the part of the City itself, and that this custom or policy was the cause of the alleged deprivation of their constitutional rights.

At best, Plaintiffs allege the City of Brooklyn:

> [N]egligently and/or recklessly failed and/or neglected to adequately train, supervise, screen, test, investigate, and/or discipline police personnel in proper procedure, including but not limited to, procedures for stops, seizures, apprehension and/or detention of suspects, and procedures for arrest and apprehension of individuals.

*Amended Complaint*, ¶43.  These conclusory allegations, however, contain no factual support.  Plaintiffs do not present any specific facts in the record (or, indeed, make any specific allegations) showing the existence of a continuing pattern of inaction that was directed by, or even that has been ratified by, any policy makers of the City of Brooklyn.  Nor have Plaintiffs developed any discovery on this issue, despite the passage of nearly twenty-two months since this case was filed.  "A plaintiff wishing to assert such a [municipal policy or custom] claim must plead facts tending to show a pattern of illegal conduct going beyond a single incident of wrongdoing." *Rodgers v. Lincoln Towing Service, Inc.*, 596 F. Supp.

---

[33]     This is assuming Plaintiff Bruce Jackim can establish a constitutional violation, which, as explained both above and later, cannot be decided by this Court at this time. With respect to Plaintiff Nina Jackim, as discussed above, the Court finds that she is unable to establish any constitutional violation in the first instance for the reasons outlined earlier in this Opinion.

13, 20 (N.D. Ill.1984); *see also Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983) ("[a] single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability").

Simply put, Plaintiffs have made conclusory claims of municipal inaction without supporting those claims with any specific allegations or facts, or with any evidence sought and obtained in discovery. Such "boilerplate allegations of an official policy [of inaction]" are not enough. *Wellington*, 717 F.2d at 936. It is clear to the Court that, despite the alternative nature of Counts Six and Seven of the Amended Complaint, Plaintiffs are proceeding solely on a theory of respondeat superior. The true nature of Plaintiffs' claim against the City of Brooklyn is that the City is responsible, as an employer, for the purported unconstitutional actions of its employees - Officers Meadows and Albany. Plaintiffs claim this without any showing that the events which transpired at Sam's Club were anything more than isolated. Such claims simply are not cognizable under 42 U.S.C. § 1983. Accordingly, the City of Brooklyn is entitled to summary judgment on Counts Six and Seven of Plaintiffs' Complaint.

### G.    State Law Claims Against the Brooklyn Defendants

In Counts Four and Seven of the Amended Complaint, Plaintiffs assert state law claims in tort for reckless infliction of emotional distress and respondeat superior against both the City of Brooklyn and the individual officers.[34]   The City claims that it is immune from these state law causes of action under Ohio Rev. Code § 2744.02, which provides "political subdivisions" of the State of Ohio general

---

[34]     Plaintiffs have not included the City of Brooklyn in Count Five - which is a negligence claim based upon an alleged breach of duty on the part of Sam's East, Inc. and/or WalMart Stores East, Inc., and Jane Doe (a Sam's Club Employee).

immunity from civil damages in tort with limited exceptions.[35]  For their part, Officers Meadows and Albany assert that they are immune from liability for these state law claims by virtue of Ohio Rev. Code § 2744.03(A)(6), which provides individual employees of a political subdivision with immunity for acts taken within the course and scope of their employment so long as those acts were not undertaken with a malicious purpose, in bad faith, or in a wanton or reckless manner.

While the Brooklyn Defendants may be correct that they are protected against Plaintiffs' state law claims by virtue of these state statutory immunities, the Court declines to analyze that question at this time.   Given the rulings made to-date in this matter and the possibility that Mr. Jackim may be re-convicted of the pending charges against him, it may well be that there are no federal causes of action that can be sustained on behalf of any plaintiff against any defendant in this action.   If that is so, the Court would have no independent basis upon which to exercise jurisdiction over the state law claims asserted here.

Where all federal claims are dismissed prior to trial, the general rule is that it is appropriate for the trial court to decline to exercise jurisdiction over pendant state law causes of action. While this rule is not inviolate, and the Court retains discretion in appropriate circumstances to do so, the better practice is for the Court to avoid consideration of purely state law matters once the federal predicate for jurisdiction is found lacking. *See Taylor v. First of America Bank-Wayne*, 973 F.3d 1284, 1287 (6th Cir. 1992).  Indeed, the Sixth Circuit has ruled that district courts have "minimal **discretion**" to decide **pendant state law claims** once the basis for federal **jurisdiction** is dismissed before trial. *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986).

---

[35]    A "township, county . . . or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state" is a political subdivision in Ohio.  Ohio Rev. Code § 2744.01(F).

For these reasons, the Court declines to express an opinion on Plaintiffs' state law causes of action, or on the application of the state law immunities thereto, until it determines whether it has a federal predicate to exercise jurisdiction over these matters at all.

**V.      SAM'S CLUB'S MOTION FOR SUMMARY JUDGMENT**

In addition to filing its Partial Cross Motion for Summary Judgment, which sought dismissal of Plaintiffs' § 1983 claims on the grounds already discussed, Sam's Club has filed a Motion for Summary Judgment on additional grounds.  Sam's Club argues it is entitled to judgment as a matter of law on all § 1983 claims asserted by Plaintiffs in Count One (Equal Protection), Count Two (Unreasonable Seizure/Excessive Force), and Count Three (42 U.S.C. §1983 Conspiracy) of the Amended Complaint because Sam's Club is not a state actor - which is a necessary predicate to the assertion of any § 1983 claim.  Sam's Club further seeks judgment in its favor on Plaintiffs' state law tort claims asserted in Count Four (Reckless Infliction of Emotional Distress), Count Five (Negligence), and Count Seven (Respondeat Superior).

Unlike with the other Motions for Summary Judgment filed in this case, Plaintiffs filed a timely response to Sam's Club's Motion for Summary Judgment.  In their response, Plaintiffs argue that Sam's Club has only offered evidence "on the unlawful arrest and barbaric treatment issues," and that this evidence is not sufficient to create a genuine issue of material fact.  According to Plaintiffs, Sam's Club is not entitled to summary judgment unless it comes forward with ***substantial evidence*** on all issues briefed in its Motion for Summary Judgment.  After making this general statement, unsupported by any

case law,[36] Plaintiffs focus the substance of their response <u>solely</u> on the arguments made by Sam's Club with respect to Count Three of the Amended Complaint (42 U.S.C. §1983 Conspiracy).  Plaintiffs do not address any of the other claims on which Sam's Club seeks summary judgment; specifically, Plaintiffs do not address Sam's Club's arguments with respect to their equal protection claims asserted under § 1983,  their excessive force and unreasonable seizure claims asserted under § 1983, or their reckless infliction of emotional distress, negligence and respondeat superior claims asserted under state

---

[36]      Plaintiffs cite to a footnote in *Moores Federal Practice*, which they claim provides that "Summary Judgment, like judgment as a matter of law, should be granted unless the evidence opposing summary judgment is substantial." It is unclear why Plaintiffs have chosen to cite to this single provision of *Moore's*, since it places the burden on <u>Plaintiffs</u> to come forward with substantial evidence in **opposition** to Sam's Club's Motion for Summary Judgment; it does not support the contrary view Plaintiffs espouse.

law.[37]

### A. Sam's Club's Assertion that it is a Private Actor and Not a "State Actor" for Purposes of § 1983 Claims.

In support of its argument that Plaintiffs' claims in Counts One, Two and Three of the Amended Complaint cannot be asserted against it, Sam's Club offers the well-established principle that a crucial element of any § 1983 action is "conduct committed by a person acting under color of state law." *See generally Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978); *Dunn v. City of Tennessee,* 697 F.2d 121

---

[37]      In fact, the only other arguments made by Plaintiffs in their responsive brief relate to a captioned claim that "Plaintiffs are Entitled to a Summary Judgment on the Surveillance Tape Issue." Presumably, Plaintiffs are continuing - yet again - to try and insert a cause of action for "evidence tampering" into this litigation. The Court, however, previously denied Plaintiffs' Motion for Summary Judgement, which first attempted to introduce - by way of an untimely "Supplement" to Plaintiff's Motion for Summary Judgement - claims regarding alleged evidence tampering and suppression of evidence in the state court criminal trial. While it has been unclear throughout this case whether Plaintiffs are attempting to assert a cause of action for spoliation of evidence (which was never raised in the Amended Complaint), use their arguments of evidence tampering and improper suppression to attack the outcome of the criminal trial, or seek damages because of the alleged "unfairness" of that trial, the Court previously held that Plaintiffs' arguments on this issue were procedurally and substantively improper. Nothing changes the Court's prior findings. Indeed, although Plaintiffs generally assert that Sam's Club "conspired" with the other named defendants to tamper with, alter, and suppress a surveillance tape during the state court criminal trial, Plaintiffs concede that Sam's Club had no part in suppressing evidence by stating that: "at the instance [sic] of the Prosecutor, the trial court excluded the admission of the videotape." The mere act of evidence exclusion by the state court trial judge - at the alleged insistence of the Prosecutor - does not create a "presumption" of a conspiracy between Sam's Club and the other named defendants in this case sufficient to grant summary judgment to Plaintiffs (notwithstanding that a Cause of Action relating to alleged "evidence tampering" is not properly before this Court). It is true, moreover, as discussed above that allegations that the tape was "destroyed" are just not true. The tape was turned over to Mr. Jackim's criminal counsel during those state court proceedings. Plaintiffs' have always had custody of the tape or a copy thereof and this Court now has custody of what appears to be the original of that tape. The Court, therefore, need not address the remainder of Plaintiffs' responsive brief with respect to their arguments that "Plaintiffs are Entitled to a Summary Judgment on the Surveillance Tape Issue."

-46-

(6th Cir. 1982).  The requirement of state action under § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfgrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999).  Sam's Club contends it is purely a private actor for purposes of Plaintiffs' § 1983 claims.

Plaintiffs have not responded at all to Sam's Club assertion that it is not a state actor and, therefore, is not subject to any § 1983 liability.  It bears repeating that, by failing to proffer any evidence to rebut the claims made by Sam's Club with respect to its status as a private actor, the evidence can be construed as "so one-sided that [Sam's Club] must prevail as a matter of law." *Terry Barr Sales Agency, Inc.*, 96 F.3d at 178.  To sustain their claims under § 1983 against Sam's Club, Plaintiffs were required to come forward with at least some evidence tending to show that Sam's Club deprived them of rights secured by the Constitution or laws of the United States, while acting "under color of state law."  Plaintiffs have not made any effort to do so.  The Court, nevertheless, finds this issue critical enough to analyze it - even in the absence of any denial by Plaintiffs.[38]

Private actors can be found to be acting "under color of state law" and, therefore, potentially subject to § 1983 liability, where their "actions so approximate state action that they may be fairly attributed to the State." *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992); *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000).  The Sixth Circuit applies three tests to determine whether a private party has acted under color of state law for purposes of § 1983: (1) the "public function" test, (2) the "state compulsion" test, and (3) the "symbiotic relationship/nexus" test. *Wolotsky,* 960 F.2d at

---

[38]    There is no dispute here that the officers, even though off-duty, were <u>themselves</u> acting under color of state law and are, thus, subject to claims under § 1983.  The only question is whether, by employing off-duty police officers, Sam's Club transformed itself into a state actor.  As discussed, the Court finds that in the circumstances of <u>this</u> case, there is no evidence that it did.

1335.

Under the public function test, the actions of a private actor - such as Sam's Club - are fairly attributable to the State if the private actor "exercises powers which are traditionally exclusively reserved to the State." *Id.* (internal citations omitted).  The public function test has been interpreted narrowly - typically only including holding elections, exercising eminent domain, and operating a company-owned town - and other circuit courts have found that the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action under the public function test.  *See Chapman v. The Higbee Co. d/b/a Dillard Department Stores, Inc.*, 319 F.3d 825 (6th Cir. 2003) (citing to the Fifth, Seventh and Tenth Circuits).

In this case, Sam's Club's actions in employing an off-duty police officer as private security in its retail establishment who has the ability to detain and arrest suspected "trouble makers" does not constitute an exclusively public function, and Plaintiffs have not argued anywhere to the contrary. Indeed, a merchant's detention of persons suspected of stealing store property is not an action exclusively associated with the state because "a storekeeper's central motivation in detaining a person whom he believes to be in the act of stealing his property is self-protection, not altruism." *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979).  The same rationale applies to a storekeeper's desire to "keep the peace" and order in its establishment.  Sam's Club's security officer - Officer Meadows  -  was not performing a function reserved ***exclusively*** to the State when he attempted to quell the disturbance caused by Plaintiffs unhappiness with their shopping experience at Sam's Club.  It is clear, moreover, that, in his capacity as a Sam's Club employee he had no authority to effectuate an arrest of the Jackims.  When arresting Plaintiffs, Officer Meadows did, and only could have, acted

solely in his capacity as a City of Brooklyn police officer.  The Court finds, therefore, that Sam's Club (as distinct from Officer Meadows himself) cannot be considered a state actor for purposes of § 1983 liability under a "public function" test.

Under the state compulsion test, the State must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky,* 960 F.2d at 1335.  In the present case, the evidence does not suggest that anyone associated with the City of Brooklyn exercised any coercive power whatsoever over Sam's Club - much less coercive power sufficient to render Sam's Club's choice in employing an off-duty City of Brooklyn police officer as private security to be an action of the State.  Once again, Plaintiffs make no arguments to the contrary.  Sam's Club, therefore, cannot be considered a state actor for purposes of § 1983 liability under a "state compulsion" test.

Finally, under the "symbiotic relationship/nexus" test, the actions of a private actor only may constitute state action when there is a sufficiently close nexus between the State and the challenged action of the private actor, such that the actions of the private actor may be fairly attributable to the State.  Although this test requires a fact-specific analysis, the Sixth Circuit has made clear that the ties between the private party and the State must be substantial.  *Wolotsky,* 960 F.2d at 1335.  This is assumed by Sam's Club to be the theory Plaintiffs are proceeding under to show "state action" on the part of Sam's Club.

Plaintiffs presumably claim that state action occurred, and Sam's Club is therefore responsible under § 1983, because Officer Meadows was employed both by Sam's Club ***and*** the City of Brooklyn Police Department at the time of their arrest.  Sam's Club asserts, however, that this is insufficient as a matter of law, citing *Van Hull v. Marriott Courtyard*, 87 F. Supp. 2d 771 (N.D. Ohio 2000) (Carr, J.),

-49-

and *Chesler v. Doe*, 532 F. Supp. 1033 (N.D. Ohio 1982) (Aldrich, J.). In both of these cases, from this Court, the district judges found that the hotels involved - the Marriot and Stouffer's Inn - were private entities that could not be liable under § 1983 for the actions of off-duty police officers and/or sheriff's deputies employed by the hotels as security guards.

Sam's Club additionally cites to the state court criminal trial testimony of Officer Meadows where he explains that he believed he was acting in his capacity as a police officer when he first began talking to Plaintiffs about "waiting their turn in line" and "behaving." Sam's Club contends this is proof that Officer Meadows immediately "shed" his role as an employee of Sam's Club, and began acting solely in his official capacity as a police officer for the City of Brooklyn. Officer Meadows testified at trial that he identified himself as a police officer shortly after approaching Plaintiffs, and that he was acting in that capacity from that point forward.

Consistent with Officer Meadow's view of his role when interacting with Plaintiffs, is Plaintiffs' own allegation in the Amended Complaint that "at all times relevant, Defendants Meadows and Albany acted on behalf and/or under the control of Defendant City of Brooklyn and/or City of Brooklyn Police Department." *Amended Complaint*, ¶4. In this regard, Plaintiffs have neither alleged nor, despite full discovery, offered any evidence that Officer Meadows was acting pursuant to any store policy adopted or enforced by Sam's Club. Indeed, Plaintiffs' own version of events, as revealed in their deposition transcripts, is that Officer Meadows's involvement with Mr. Jackim was prompted by the officer's own observations of Mr. Jackim's behavior and that the altercation which ensued between them grew out of Officers Meadows's threat to arrest Mr. Jackim (a threat Mr. Jackim felt was unjustified and inconsistent with his right to free speech). No one from Sam's Club directed Officer Meadows to intervene - Mr. Jackim testified that his behavior caught the officer's attention without prompting from

others in the store - and  it is undisputed that no one from Sam's Club dictated the officer's actions once he did intervene.

While there are limited circumstances under which a private actor employing an off-duty officer may be deemed to have a sufficient nexus to or symbiotic relationship with the officer's actions to be deemed a state actor under § 1983, those circumstances are clearly not present here.  *Compare Chapman v. The Higbee Company*, 319 F.3d 825 (6th Cir. 2003) (finding material issue of fact regarding store's role as a state actor where off-duty officer was alerted by a sales clerk to possible shoplifting by a customer (and, thus, did not witness any wrongdoing) initiated strip search of customer where store had a policy regarding strip searches in place, did not identify himself as a police officer, and never threatened to arrest customer during search) with *Morris v. Dillard's Department Stores, Inc.,* 277 F.3d 743 (5th Cir. 2001) (finding no state action by store as a matter of law where officer was not acting pursuant to any established store policy in effectuating arrest and made decision to arrest based on his own observations of customer and independent investigations of the customer's actions).  Plaintiff has made no effort to contradict Sam's Club's description of its own or Officer Meadows's actions with respect to the Jackims' arrest.  Indeed, Plaintiffs have not responded at all to Sam's Club's claim that it was not operating as a state actor in the circumstances at issue here.  The Court finds the (undisputed facts in this case to be far more akin to those present in *Morris* and other cases where state action was found lacking and the claims against private retail establishments were deemed subject to dismissal as a matter of law.  *See, e.g., Van Hull*, *supra* (where disorderly conduct arrest was prompted by interactions with officers, and, thus, on officer's own observations, retail establishment not deemed a state actor § 1983 purposes);  *Banks v. Toys R. US, et al.,* __ F. Supp. 2d__,  WL 241695 (E.D. La. 2004) (finding no state action on part of store where off-duty officer acting as security guard based his

decision to arrest plaintiff on personal observations which formed predicate for "probable cause" to arrest). For these reasons, the Court finds that all of Plaintiffs' § 1983 claims against Sam's Club are subject to judgment as a matter of law in favor of that Defendant.

## VI.    CONCLUSION

Given the above discussion, the following conclusions are clear:  (1)  All claims asserted by Nina Jackim pursuant to § 1983 against the Brooklyn Defendants must be dismissed, either because they are barred by her criminal conviction or there is nothing in the record to support their continued assertion (unreasonable seizure, excessive force, equal protection and/or conspiracy); (2) the equal protection claim asserted by Bruce Jackim against the Brooklyn Defendants must be dismissed because there is no evidence (or even allegations) in the record to support it; (3) the conspiracy claim asserted by Bruce Jackim against the Brooklyn Defendants must be dismissed to the extent (but only to the extent) it is premised on either an alleged  equal protection violation or his claim of excess force, again because there is nothing in the record to support such a claim; (4) Bruce Jackim's *Monell* and respondeat superior claims asserted pursuant to § 1983 against the City of Brooklyn are inadequate as a matter of law and must be dismissed;  (5) all claims against Sam's Club pursuant to § 1983, by either Plaintiff,  must be dismissed due to the absence of state action; (6) all state law claims by both Plaintiffs against Sam's Club should be dismissed due to a lack of an independent basis for this Court to continue to assert jurisdiction over those claims; (7) Bruce Jackim's remaining federal claims - the unreasonable seizure/wrongful arrest, excessive force and conspiracy claims against the Brooklyn Defendants - are barred by the principles of *Heck*, or concerns regarding both the potential application of *Heck* to a future conviction and the need to avoid federal interference with the state criminal proceedings,  prohibiting

consideration of those claims and the individual officers' assertion of qualified immunity with respect thereto, and (8) the bar to Bruce Jackim's federal claims counsels against current consideration of his remaining state law claims (respondeat superior and intentional infliction of emotional distress) against the Brooklyn Defendants given the possible absence of a jurisdictional basis upon which to premise such consideration.

The issue which is unclear is the procedural impact of those decisions listed as numbered items (7) and (8), above.  Thus, while the conclusions in items (1) through (6) mandate judgment in favor of the respective Defendants referenced therein with respect to the particular claims noted, the law is in a state of flux with respect the procedural impact of a *Heck* or *Heck*-related bar.

Until February 21, 2007 the law was fairly settled, in this Circuit and most others, that application of the principle in *Heck* required a dismissal of all claims subject to the bar arising therefrom.  With respect to actual, extant state convictions where both state and federal (pursuant to 28 U.S.C. § 2254) efforts to overturn those convictions had been exhausted, the *Heck*-based dismissal was with prejudice because, in those circumstances, no action which did <u>not</u> implicate the validity of the state conviction could ever be sustained.  Where the state conviction was still subject to attack on appeal or via habeas corpus, or had not yet been obtained - i.e., the criminal charges were pending and trial had not yet occurred - the dismissal was without prejudice. In this latter class of cases,  a dismissal without prejudice was deemed appropriate because a § 1983 cause of action might <u>become</u> cognizable if the *Heck* bar were removed by the setting aside of an existing conviction or by the dismissal, or acquittal on, pending charges.  Courts were generally unconcerned with any prejudice to Plaintiffs in this latter category of cases because most assumed that the statute of limitations on any future § 1983 claim would be tolled while the type of *Heck* bar at issue in those cases remained in effect.  *See, e.g.*, *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir. 1999), *cert. denied*, 528 U.S. 1021 (1999).

-53-

On February 21, 2007 the Supreme Court altered the landscape surrounding the interplay between § 1983 claims and *Heck*.  In *Wallace, supra,* in the context of determining when the statute of limitations for a § 1983 claim for false arrest begins to run, the Supreme Court concluded that the principle of *Heck* technically only applies to "extant" convictions - i.e., those which have been entered and have not been set aside.  Thus, the Court concluded that *Heck* does not prevent an action from being <u>instituted</u> under § 1983 where a conviction is no more than a future possibility.

This latter holding would seem to compel the conclusion that the Sixth Circuit's holding in *Wofe v. Perry*, and a host of other cases, applying the *Heck* bar to actions filed in the face of pending criminal charges is wrong.  And, without more, it would seem to compel the conclusion - premised as it is on that Sixth Circuit Authority - that this Court's conclusion that Bruce Jackim's unreasonable seizure, excessive force and conspiracy claims are not currently cognizable is also wrong.[39]  There is more in the  *Wallace* decision, however.

The *Wallace* majority acknowledged concerns raised by the dissent regarding the possibility that a criminal conviction (which would thereby give rise to a *Heck* bar) might occur mid-way through a pending § 1983 proceeding, or even after completion of a § 1983 proceeding (thus, calling into question the sustained validity of any civil judgment arising therefrom) <u>and</u> that both the criminal defendant and the prosecution might be prejudiced by the mere fact of parallel proceedings.[40]  The majority discounted

---

[39]     There is no question that *Heck* barred these claims when originally filed <u>and</u> when the current motions become ripe.  The issue this Court faces is the extent to which that fact was changed by the reversal and remand of those matters <u>and</u> what result *Wallace* counsels while Mr. Jackim awaits his retrial.

[40]     The primary prejudice to a criminal defendant was perceived to arise form the need to divide one's attention - i.e., to be forced to defend against criminal charges and to prosecute civil charges at the same time.  Prosecutors, on the other hand, usually cite to interference in the criminal pretrial process arising from civil discovery rules which allow broader discovery than to the Rules of Criminal Procedure.

these concerns, however, noting both that it is common practice for district courts to stay civil proceedings pending resolution of criminal proceedings, and that such a stay is often compelled under appropriate abstention principles, citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 703, 730 (1996). *See also, Younger v. Harris*, 401 U.S. 36 (1971) (noting need for abstention where federal proceedings would interfere with the well-settled national policy against federal interference with state court criminal proceedings).   Thus, while the Supreme Court does not seem to agree with the Sixth Circuit that it is *Heck* that bars consideration of § 1983 claims in the face of <u>ongoing</u> state criminal proceedings, it does make clear that it does not contemplate that such civil proceedings will proceed in those circumstances.  Rather, the Supreme Court indicated that a stay of civil proceedings should be imposed pending a resolution of pending criminal charges, and, presumably, any appeals or habeas corpus proceedings attendant thereto.

Indeed, the majority's decision made it clear that a stay of proceedings is likely the only just way to deal with potentially conviction - impugning § 1983 claims when it went on to find that *Heck* never tolls the statute of limitations on such § 1983 claims - whether they be mere future possibilities, or even extant convictions still subject to attack.

Thus, whether this Court is bound by existing Sixth Circuit precedent which applies *Heck* to future convictions (because the Supreme Court did not overturn any specific Circuit decision so holding) or is correct in concluding that the *Wallace* decision effectively overrules that authority by its

express discussions of *Heck*, the result is the same - Bruce Jackim's remaining claims may not proceed

while the criminal charges are still pending.   As to those remaining claims, **all further proceedings**

**in this matter are stayed pending further order of this Court.**[41]


        **IT IS SO ORDERED.**


                                        s/Kathleen M. O'Malley
                                        **KATHLEEN McDONALD O'MALLEY**
                                        **UNITED STATES DISTRICT JUDGE**


**Dated: March 22, 2007**

---

[41]        The inefficiency of this result is not lost on the Court.  In this era where district
courts are judged, in substantial measure, by how efficiently they resolve or dispose
of cases on their docket, an order which could potentially stall a case (or many such
cases) for years to come makes little practical sense.  Justice Steven Beyer's dissent
in *Wallace* made this very point and argued for a general principle allowing equitable
tolling of the statute of limitations for § 1983 actions while criminal charges  relating
to those same civil claims make their way through the criminal justice process (trial,
all subsequent appeals, possible retrials, etc).  The majority rejected that proposal,
however, seemingly making it an unavailable option for this Court.